**2024 IL 128644**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 128644)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
RUSSELL A. FREY, Appellee.

*Opinion filed January 19, 2024.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner, Russell A. Frey, was convicted in the circuit court of Lee County of three counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2010)). The court sentenced him to consecutive prison terms totaling 50 years. The appellate court affirmed his conviction and sentence. *People v. Frey*, 2018 IL App (2d) 150868-U. Petitioner then filed a *pro se* postconviction

petition. See 2022 IL App (2d) 210044-U. The trial court appointed counsel for petitioner when it failed to rule on the petition within 90 days. *Id.* ¶ 9. Counsel later moved to withdraw, arguing that petitioner had no meritorious claims. *Id.* ¶ 10. The trial court granted the motion to withdraw. *Id.* ¶ 11. The State moved to dismiss the petition, adopting counsel's arguments from the motion to withdraw. *Id.* ¶ 12. The trial court granted the motion to dismiss. *Id.* The appellate court vacated and remanded with directions, holding that postconviction counsel did not provide reasonable assistance of counsel when he failed to ascertain one of petitioner's claims. *Id.* ¶ 36. For the reasons that follow, we reverse the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3         The State charged petitioner with three counts of predatory criminal sexual assault of a child. The State alleged that petitioner committed three acts of sexual penetration on his 12-year-old daughter. The cause proceeded to a jury trial. Approximately two hours into its deliberations, the jury sent a note to the judge asking whether the burden of proof required physical evidence. The court, with the consent of the parties, responded, "[y]ou are to decide this case based on the evidence you have seen and heard together with the instructions I have given you." Later that evening, the jury returned a verdict of guilty on all three counts. The court polled the jurors, and each confirmed that this was his or her verdict. The court denied petitioner's motion for a new trial and sentenced him to consecutive prison terms of 10, 15, and 25 years.

¶ 4         Petitioner appealed, arguing that the trial court erred in admitting certain testimony from petitioner's stepson and a letter that petitioner had written to the state's attorney. *Frey*, 2018 IL App (2d) 150868-U, ¶ 47. The appellate court held that the trial court did not abuse its discretion in admitting the testimony from petitioner's stepson. *Id.* ¶ 57. As for the letter, the court concluded that its probative value outweighed any prejudice to petitioner. *Id.* ¶ 61. However, the court then explained that, even if it were to agree with petitioner that the prejudice arising from the letter outweighed its probative value, any error in admitting it was harmless. *Id.* ¶ 62. In arguing against the error being harmless, petitioner contended that it was a close case. *Id.* ¶ 63. He relied on the note from the jury asking whether

physical evidence was required for the State to meet its burden of proof. *Id.* Petitioner also relied on a second jury note explaining that the jurors were initially deadlocked. *Id.* ¶ 63 n.2. However, the appellate court concluded that this note was not sent to the trial court:

> "The defendant also points out that the record contains a second note apparently written by the jury, which reads, 'Please advise—We have 10 guilty (all 3 counts) 2 not guilty all 3 counts. The 2 not guilty are firm that the State did not prove guilt on all the counts.' However, there is absolutely no indication in the record as to the source of this note. The trial transcript reflects that the jury retired to deliberate about 4 p.m. About 6 p.m., it sent out the note regarding physical evidence, and the trial court called the attorneys back to discuss the appropriate response, which it then delivered to the jury. The bailiff notified the court that the jury had reached a verdict shortly before 10 p.m. There is no mention whatsoever of the second note regarding the 10-2 split in the jury, and no explanation for its presence in the common law record. Accordingly, we have difficulty in determining what weight, if any, should be placed on the second note. Ordinarily, when the record is silent on a point, we must presume that the trial court acted in conformity with the law. *In re Estate of Cargola*, 2017 IL App (1st) 151823, ¶ 17. A trial court generally must address on the record any notes it receives from the jury. See *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994). We presume that the trial court's failure to address the second note on the record indicates that the jury ultimately chose not to send out the second note. This presumption is buttressed by the fact that the trial court took great pains to properly address the note it received about physical evidence." *Id.*

Finally, the court rejected petitioner's cumulative error argument. *Id.* ¶ 64. The court noted that, even if it viewed the admission of the letter as error, a petitioner cannot argue cumulative error based on one error. *Id.*

¶ 5    Petitioner then filed the *pro se* postconviction petition that is the subject of this appeal. See 2022 IL App (2d) 210044-U. In the body of the petition, petitioner presents two claims for relief: an ineffective assistance of counsel claim and a proportionate penalties sentencing claim. The petition begins by explaining that "[t]he main claim is ineffective assistance of counsel." Over the next two pages,

petitioner details five specific ways in which he believed that trial counsel was ineffective. On the next page, he argues that appellate counsel was ineffective for failing to raise the claims of ineffective assistance of trial counsel. He next alleges that both trial and appellate counsel "fell short when it comes to the investigation done in this case." In the concluding paragraph of the ineffective assistance of counsel portion of the petition, petitioner quotes Justice Black's dissent in *Betts v. Brady*, 316 U.S. 455, 476 (1942) (Black, J., dissenting, joined by Douglas and Murphy, JJ.), for the proposition that "[w]hether a man is innocent cannot be determined from a trial in which, as here, denial of counsel has made it impossible to conclude, with any satisfactory degree of certainty, that the defendant's case was adequately presented." In the next two sentences, he argues that he is entitled to a new trial because he has met both prongs of the *Strickland* test. See *Strickland v. Washington*, 466 U.S. 668 (1984). The concluding sentence of this final paragraph is: "The initial jury could not agree on a guilty verdict in this case, yet the Judge told them they could not leave that night unless they all agreed on something, being outnumbered and pressured they took the defendants [*sic*] freedom!"

¶ 6    On the next page of the petition, petitioner presents his proportionate penalties claim. The claim is set forth in a paragraph titled "Constitutional Violation." Petitioner begins by noting that he was sentenced to a total of 50 years after a jury verdict in which two jurors initially voted not guilty. Petitioner asserts that the judge told the jurors that they should continue deliberating and that they could not leave until they agree. Petitioner then says that this caused him to be sentenced to a *de facto* life sentence and that the court failed to consider his rehabilitative potential. Petitioner cites the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and argues that he will likely not survive his time in prison. Petitioner argued that the court imposing a sentence that will not allow him to ever again be a productive citizen disregarded the central goal of our penal system.

¶ 7    The next two pages of the petition are petitioner's "Motion for Appointment of Counsel." Petitioner explains that he is without sufficient funds to pay for the costs of the proceedings or to hire an attorney, that he has a constitutional right to access to the courts, and that his claims are not frivolous.

¶ 8        Petitioner appended to the petition the affidavit of his sister, Roxanne Shaffer. The affidavit is preceded by a page titled "Newly Discovered Evidence." In a paragraph, he explains the significance of Shaffer's affidavit:

> "On July 25, 2019 Roxanne Shaffer made a Sworn Affidavit on behalf of the defendant which is claiming a violation of the defendants [*sic*] right to due process by forcing the jury to come to a unanimous verdict or they were not allowed to leave that night despite a 10-2 verdict! Failure of trial counsel to fully depose all witnesses also adds this to the claim for ineffective assistance of trial counsel."

¶ 9        In Shaffer's affidavit, she says that at approximately 9 p.m. on the date of her brother's conviction, the jury sent a note saying that the verdict was 10 to 2. According to Shaffer, the jurors asked if they could continue the next day, but the judge denied the request, saying that he had a murder trial beginning the next day and that he did not want to postpone it. Within half an hour to 45 minutes, the jury came back with a guilty verdict. Shaffer said that she believed that this took away petitioner's right to due process.

¶ 10        On May 13, 2020, the trial court appointed attorney Eric Arnquist to represent petitioner. The court explained that it was appointing counsel because the 90-day time frame for entering an order on the petition had elapsed.

¶ 11        On October 13, 2020, Arnquist filed a motion to withdraw as counsel for petitioner. In the motion, Arnquist noted that the petition had not received a first stage review by the trial court. Arnquist contended that petitioner's claims lacked merit and that, pursuant to *People v. Kuehner*, 2015 IL 117695, he would explain why. Arnquist then went through petitioner's claims of ineffective assistance of trial and appellate counsel and explained why they lacked merit. He next explained why petitioner's sentencing claim lacked merit. Arnquist concluded the motion with a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Arnquist certified that he had consulted with petitioner to ascertain his contentions of constitutional rights, had examined the record of proceedings from the trial, and had made any amendments to the *pro se* petition that were necessary for an adequate presentation of petitioner's contentions.

¶ 12        At a hearing on the motion, Arnquist said that he reviewed his motion to withdraw in detail with petitioner. Arnquist further explained that he had reviewed the record on multiple occasions and had considered every page of it. He also reviewed everything that petitioner had filed and all correspondence with petitioner. He also reviewed the appellate court decision in the original appeal. Arnquist said that petitioner had asked him to reach out to potential witnesses and that he had done so. However, he was not able to make contact with everyone that petitioner wanted him to. The court asked petitioner if he had reviewed the motion to withdraw with Arnquist. Petitioner responded, "Yeah. I object to him withdrawing." The court then granted the motion to withdraw, explaining that it agreed with Arnquist's assessment of the issues.

¶ 13        The State then asked for leave of court to file a motion to dismiss instanter. The court granted the motion. In the motion, the State adopted the reasoning and conclusions of Arnquist's motion to withdraw. At a hearing on the motion to dismiss, the State stood on the motion. The court asked petitioner if he had anything to argue in response to the State's motion. Petitioner responded that he had asked Arnquist to make some phone calls and that Arnquist had not made them. The court then asked petitioner if he had anything to argue in response to the motion to dismiss. Petitioner responded, "Other than the fact that my trial lawyer didn't do everything he could to get me a not-guilty verdict. That's all I can argue with." The court then asked petitioner if he had anything else to argue. Petitioner responded, "No, Your Honor." The court granted the motion to dismiss, stating that it agreed with Arnquist's assessment that petitioner's claims lacked merit.

¶ 14        Petitioner appealed, arguing that postconviction counsel did not provide reasonable assistance under Rule 651(c) because his motion to withdraw failed to address petitioner's due process claim concerning the jury note. Accordingly, he contended that the trial court had abused its discretion in allowing postconviction counsel to withdraw. 2022 IL App (2d) 210044-U, ¶ 14. The appellate court agreed with petitioner. *Id.* ¶ 34.

¶ 15        The court noted that Rule 651(c) prescribes specific duties to ensure that postconviction petitioners receive a reasonable level of assistance. *Id.* ¶ 20. If, after demonstrating compliance with Rule 651(c), counsel determines that the *pro se*

petition is frivolous or patently without merit, counsel may move to withdraw. *Id.* ¶ 21.

¶ 16 The court explained that its review of an order permitting withdrawal differs based on how the petition arrived at the second stage. *Id.* ¶ 23. If the petition advanced to the second stage because the trial court found it potentially meritorious, then the motion to withdraw must contain at least some explanation as to why all of the claims set forth in the petition are so lacking in legal and factual support that withdrawal is allowed. *Id.* (citing *Kuehner*, 2015 IL 117695, ¶ 27). If, however, the petition advanced to the second stage based on trial court inaction, " 'judicial economy sometimes dictates affirming the grant of leave to withdraw even where the motion to withdraw is deficient.' " *Id.* ¶ 24 (quoting *People v. Moore*, 2018 IL App (2d) 170120, ¶ 38). The court noted that, in that situation, withdrawal may be allowed if counsel complied with Rule 651(c) and the record demonstrates that the claims in the *pro se* petition are frivolous or patently without merit. *Id.* ¶ 26. However, the court explained it had previously held in *Moore* that, even when the petition advances to the second stage based on trial court inaction, appointed counsel's motion to withdraw must address the potential merit of all the petition's claims. *Id.* ¶ 27. In the court's view, the duty of counsel is the same no matter how the petition advances to the second stage. The difference is that, when the petition advances to the second stage based on trial court inaction, judicial economy may sometimes warrant affirming the grant of a motion to withdraw even in the face of a deficient motion. *Id.*

¶ 17 The court explained that it held in *Moore* that, when the motion to withdraw fails to address one of the *pro se* petitioner's claims, the case must be remanded even when counsel filed a Rule 651(c) certificate. *Id.* ¶ 28. *Moore* read *People v. Greer*, 212 Ill. 2d 192 (2004), to hold that " 'the reviewing court cannot relieve counsel of his or her duty under Rule 651(c) to *ascertain* the petitioner's claims.' " (Emphasis in original.) 2022 IL App (2d) 210044-U, ¶ 27 (quoting *Moore*, 2018 IL App (2d) 170120, ¶ 43). The court explained that *Moore* stands for the proposition that, if counsel does not address one of the *pro se* petition's claims in the motion to withdraw, then counsel has not fulfilled his or her duty under Rule 651(c) to ascertain the petitioner's claims. *Id.* ¶ 28.

¶ 18    The court then held that the present case is governed by *Moore*. The court noted that counsel's motion to withdraw did not mention "the claim based on the second jury note or any of the circumstances surrounding the claim." *Id.* ¶ 29. The court rejected the State's argument that, when a petition advances to the second stage based on trial court inaction, the filing of a Rule 651(c) certificate is sufficient to raise a presumption that counsel complied with the rule. *Id.* ¶ 30. The court explained that it would not "presume compliance when the record suggests otherwise." *Id.* ¶ 31. The court believed that the petition, liberally construed, set forth a due process claim based on the second jury note. *Id.* ¶ 32. The court rejected the State's assertion that petitioner had forfeited the claim by not raising the issue *pro se* at the hearing on the motion to dismiss. *Id.* The court noted that the State had failed to cite any authority for applying forfeiture in such a manner as to excuse an attorney's lack of compliance with Rule 651(c). *Id.* Moreover, the court held that petitioner's statement at the hearing that his counsel did not make requested phone calls and did not " 'do everything he could to get [defendant] a not-guilty verdict' " fairly encompassed a due process claim based on the second jury note. *Id.* Accordingly, as it had done in *Moore*, the court vacated the orders allowing the motion to withdraw and dismissing the petition and remanded the cause with directions to appoint new postconviction counsel for petitioner. *Id.* ¶ 34.

¶ 19    This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).


¶ 20                                    ANALYSIS

¶ 21    On appeal, the State argues that the appellate court improperly applied the *Kuehner* standard, which requires appointed counsel moving to withdraw to explain why each of the claims in the *pro se* petition lacks merit. Because this petition advanced to the second stage based on trial court inaction, the State argues that it is governed by *Greer*. According to the State, the relevant inquiry under *Greer* is whether (1) counsel complied with Rule 651(c) and (2) the petition's claims lack merit. The State contends that counsel complied with Rule 651(c) and that a due process claim based on the second jury note is frivolous and patently without merit. Both the scope of an attorney's duties under Rule 651(c) and an attorney's

compliance with that rule are reviewed *de novo*. See *People v. Smith*, 2020 IL App (1st) 181220, ¶ 13.

¶ 22　　　The Post-Conviction Hearing Act (Act) provides a mechanism for a criminal defendant to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). At the first stage of postconviction proceedings, the circuit court must independently review the postconviction petition and shall dismiss it if it is "frivolous or is patently without merit." *Id.* § 122-2.1(a)(2). The petition advances to the second stage if (1) the court fails to rule on the petition within 90 days, regardless of the petition's merit, or (2) the facts alleged in the petition state an arguable claim of constitutional deprivation. *People v. Urzua*, 2023 IL 127789, ¶ 32.

¶ 23　　　At the second stage, counsel may be appointed to assist an indigent defendant. *Id.* ¶ 33. In a postconviction proceeding, there is no constitutional right to the assistance of counsel. *People v. Custer*, 2019 IL 123339, ¶ 30. Rather, the right to counsel is a matter of "legislative grace." *People v. Porter*, 122 Ill. 2d 64, 73 (1988). A postconviction petitioner is entitled only to the level of assistance granted by the Act, which this court has determined to be a " 'reasonable' level of assistance" (*People v. Flores*, 153 Ill. 2d 264, 276 (1992)), which is less than that afforded by the federal and state constitutions at trial (*People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)).

¶ 24　　　Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which governs the appointment of counsel in postconviction proceedings provides, in part, as follows:

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions."

Postconviction counsel's obligation is to investigate and properly present the claims raised by the petitioner. *Pendleton*, 223 Ill. 2d at 472. Counsel may, but is not required to, raise additional claims on the petitioner's behalf. *Id.* at 476. If counsel files a certificate pursuant to Rule 651(c), a rebuttable presumption arises that the petitioner received the reasonable assistance of counsel. *People v. Addison*, 2023 IL 127119, ¶ 21.

¶ 25    In *Greer*, this court explained that, when appointed counsel determines that the claims in the petition lack merit and moves to withdraw, counsel "should make some effort to explain *why* defendant's claims are frivolous or patently without merit." (Emphasis in original.) *Greer*, 212 Ill. 2d at 212. In that case, postconviction counsel asserted that he could not " 'properly substantiate' " the petitioner's claim. *Id.* at 200. Although this court cautioned that whether postconviction counsel can properly substantiate a petitioner's claim is not the standard by which counsel should be judging a petitioner's postconviction claim, this court stated that it would not reverse the granting of the motion to withdraw when counsel fulfilled his Rule 651(c) duties and the record demonstrated that the petitioner's claims were frivolous and without merit. *Id.* at 212.

¶ 26    In *Kuehner*, this court was again faced with a situation in which appointed counsel moved to withdraw but did not explain why each of the petitioner's issues lacked merit. *Kuehner*, 2015 IL 117695, ¶ 9. Counsel argued in her motion that the petitioner's claims lacked merit. She filed a supporting brief that addressed in detail her reasons for concluding that two of the petitioner's claims lacked merit. Counsel, however, failed to address or even acknowledge one of the petitioner's claims. *Id.* This court explained that the case was in a different procedural posture than *Greer*. *Id.* ¶ 18. In *Greer*, the petition had advanced to the second stage when the court failed to rule on the petition within 90 days. *Id.* ¶ 19. In *Kuehner*, the petition advanced to the second stage because the trial court determined that it was not frivolous or patently without merit. *Id.* ¶ 20. This court concluded that, when an attorney moves to withdraw in that situation, he or she "may not simply move to withdraw on the grounds that the *pro se* claims are frivolous or patently without merit, as the trial court already has ruled expressly to the contrary." *Id.* ¶ 21. Rather, counsel must demonstrate, with respect to each of the *pro se* claims, "why the trial court's initial assessment was incorrect." *Id.* In other words, the court explained:

"if we were willing to say in *Greer* that a motion to withdraw *should* include such explanations when the petition advances to stage two by default, we are now prepared to say that such a motion *must* include such explanations when the petition advances to the second stage by affirmative judicial action." (Emphasis in original.) *Id.*

¶ 27   Taken together, *Greer* and *Kuehner* establish that, whether a petition advances to the second stage based on judicial inaction or because the trial court found potential merit to the claims, a properly filed motion to withdraw is one that sets forth why the claims lack merit. This is confirmed by this court's recent decision in *Urzua*, 2023 IL 127789. In that case, the petition advanced to the second stage because of trial court inaction. *Id.* ¶ 9. In setting forth the governing law, this court cited *Kuehner* for the proposition that, when counsel determines that he is ethically obligated to withdraw, "appointed counsel must explain why each of the petitioner's *pro se* claims lacks merit." *Id.* ¶ 33.

¶ 28   Thus, although counsel's *obligation* is the same in either scenario, the consequences of filing a defective motion are potentially different. *Kuehner* establishes a rule of automatic reversal if the petition has advanced based on a trial court finding that the claims are potentially meritorious but counsel fails to address one of those claims in the motion to withdraw. *Kuehner*, 2015 IL 117695, ¶¶ 22-24. In a case in which the petition has advanced based on trial court inaction, this court has recognized that, in certain circumstances, reversal is not required. In *Greer*, this court chose not to reverse when it appeared that counsel had fulfilled his duties under Rule 651(c) and the record showed that the petition was frivolous and without merit. *Greer*, 212 Ill. 2d at 212. In other words, as the appellate court has recognized, *Greer* stands for the proposition that "judicial economy sometimes dictates affirming the grant of leave to withdraw even where the motion to withdraw is deficient." *Moore*, 2018 IL App (2d) 170120, ¶ 38.

¶ 29   In this case, the appellate court adopted an approach that largely collapsed the above framework. Although the court acknowledged and accepted the difference between *Kuehner* and *Greer* (2022 IL App (2d) 210044-U, ¶¶ 24-26), it then adopted a framework that would require automatic reversal whenever a claim is not addressed in the motion to withdraw. The court determined that, liberally construed, petitioner's petition contained a due process claim based on the second jury note.

*Id.* ¶ 32. The court believed that postconviction counsel's failure to mention this claim in the motion to withdraw necessarily meant that counsel had failed to ascertain one of petitioner's claims. *Id.* ¶ 29. Thus, because Rule 651(c) requires counsel to ascertain petitioner's claims, counsel had violated Rule 651(c) by failing to address this claim in the motion to withdraw. *Id.* ¶¶ 28-29. The court acknowledged that counsel had filed a Rule 651(c) certificate (*id.* ¶ 10) but impliedly determined that petitioner had rebutted the presumption of reasonable assistance arising from the certificate (*id.* ¶¶ 28-29). And, because Rule 651(c) violations are not subject to harmless error analysis (*id.* ¶ 28), reversal and remand for the appointment of new counsel were required (*id.* ¶ 34). The framework adopted by the appellate court necessarily means that anytime a postconviction petitioner can identify a claim that the petition can be liberally construed to assert, automatic reversal is required if the claim is not mentioned in counsel's motion to withdraw.

¶ 30        The problem with the appellate court's position is that it is not always possible to discern what claims a *pro se* postconviction petitioner is raising. That is why Rule 651(c) ties the "ascertainment" requirement to a consultation requirement. The requirement under Rule 651(c) is not merely to ascertain the petitioner's claims, as the appellate court stated. See *id.* ¶ 27. Rather, Rule 651(c) requires counsel to certify that he or she "*consulted with petitioner* by phone, mail, electronic means or in person *to ascertain his or her contentions of deprivation of constitutional rights*." (Emphases added.) Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Postconviction counsel certified that he did so, following which he filed a motion to withdraw that addressed petitioner's ineffective assistance of counsel and sentencing claims. Because counsel filed a Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arose. *Addison*, 2023 IL 127119, ¶ 21. Petitioner can overcome that presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule. *Id.*

¶ 31        We hold that petitioner did not rebut the presumption of reasonable assistance. Nothing in the record establishes that counsel failed to consult with petitioner to ascertain his claims of a deprivation of constitutional rights. The appellate court concluded that petitioner rebutted the presumption because the petition could be liberally construed to assert a due process claim. 2022 IL App (2d) 210044-U, ¶ 32. However, the petition was, at best, ambiguous on that matter, and postconviction

counsel certified that he consulted with petitioner to ascertain his claims. Following that consultation, he filed a motion to withdraw addressing the petition's ineffective assistance of counsel and sentencing claims. There is nothing in the record to show that counsel did not consult with petitioner to ascertain his claims. No one but petitioner and postconviction counsel knows what was said during those consultations. If petitioner confirmed that the claims he intended to raise were ineffective assistance of counsel and a proportionate penalties claim, the record would look precisely as it does now. Postconviction counsel addressed the merits of those issues in his motion to withdraw, and he told the court that he went over the motion in detail with petitioner. The trial court asked petitioner if he had anything to say in response. Petitioner stated that he objected to counsel withdrawing, but he did not say that counsel had overlooked any of his claims. At the hearing on the motion to dismiss the petition, petitioner argued that he asked postconviction counsel to make some phone calls and that counsel did not do so. He also argued that he did not believe that trial counsel did everything he could to obtain a not-guilty verdict. He did not mention a due process claim or state that one had been overlooked by counsel. In pointing this out we are not, as petitioner argues, holding that he forfeited a claim by his silence or that we are shifting part of the burden to him. We are simply acknowledging that there is nothing in the record to rebut the presumption of reasonable assistance that arose from counsel's Rule 651(c) certificate. Moreover, we disagree with the appellate court's assertion that petitioner stating that counsel did not make all requested phone calls and that trial counsel did not do everything he could to get petitioner a not-guilty verdict "fairly encompassed the due process claim." See *id.* We do not see how this can be understood to be referencing counsel overlooking a due process claim based on the second jury note.

¶ 32   The most natural way to read the petition is that it raises substantive claims of ineffective assistance of counsel and a proportionate penalties sentencing claim. The petition is divided into three sections: (1) the substantive claims, (2) the motion for the appointment of counsel, and (3) the supporting documentation. Although the jury note is mentioned in both sections of the substantive portion of the petition, it is tied to petitioner's other claims. There is no due process claim asserted in the substantive portion of the petition. The only time due process is mentioned is in the supporting documentation. Petitioner's sister claimed in her affidavit that the trial judge denied the jurors' request to continue their deliberations the next day and that

she "believe[d] this took away [petitioner's] right of due process." On the preceding page, petitioner described the affidavit and explained why he was attaching it. He explained that it adds to the claim of ineffective assistance of counsel.

¶ 33    It seems clear that this is how appointed counsel read the petition. He filed a certificate pursuant to Rule 651(c) in which he stated that he consulted with petitioner to ascertain his deprivation of constitutional rights. Counsel's failure to mention a due process claim based on the second jury note strongly suggests that, after consulting with petitioner, counsel reasonably ascertained that petitioner was not asserting a standalone due process claim based on the second jury note. There is no question that his intent was to address all of petitioner's claims in his motion to withdraw. He stated in the motion that it was being filed pursuant to this court's holding in *Kuehner* and that his obligation was to explain why all of the petition's claims lack merit. In *Kuehner*, we held that postconviction counsel's motion to withdraw was required to address claims that were "specific, substantial, and sufficiently present in the petition to warrant appointed counsel's attention." *Kuehner*, 2015 IL 117695, ¶ 23. Counsel did so by addressing the claims of ineffective assistance of counsel and sentencing error.

¶ 34    Petitioner relies on *Moore*, 2018 IL App (2d) 170120, in which the appellate court held that the petitioner had failed to comply with Rule 651(c) when counsel filed a motion to withdraw that omitted one of the petitioner's claims. The case had proceeded to stage two when the trial court failed to rule on the petition within 90 days. The court held that counsel had failed to ascertain petitioner's claim that appellate counsel was ineffective for failing to challenge amendments to the indictment. *Id.* ¶ 41. The court acknowledged the *pro se* petition's "length and density" but stated that it could not excuse compliance with Rule 651(c)'s mandate that counsel ascertain the petitioner's claims. *Id.* ¶ 42. The State argues that *Moore* was incorrectly decided because (1) it decoupled the ascertainment requirement from the consultation requirement and (2) the court failed to acknowledge—let alone apply—the presumption that arises from the filing of a Rule 651(c) certificate. For purposes of this appeal, we do not need to address the correctness of *Moore*, as it is clearly distinguishable. In *Moore*, there was an omitted claim that was clearly stated in the petition. See *id.* ¶ 24. Because we are not faced with that situation, we have no need to weigh in on the correctness of that decision.

¶ 35        Petitioner has failed to rebut the presumption of reasonable assistance that arose from counsel's Rule 651(c) certificate. We note that, in addition to arguing that postconviction counsel complied with Rule 651(c), the State also argues that any due process claim based on the second jury note would lack merit. Because this case arose from a situation in which the petition proceeded to stage two because of trial court inaction, the State contends that *Greer* applies and that the relevant inquiry is whether counsel complied with Rule 651(c) and whether petitioner's claims lack merit. As explained above, however, regardless of how the petition arrives at the second stage, a proper motion to withdraw should explain why the petition's claims lack merit. The separate *Greer* standard comes into play only when the court is faced with a deficient motion to withdraw. That is not the situation here. Petitioner has not established that the motion to withdraw was deficient. Because petitioner failed to rebut the presumption that arose from counsel's Rule 651(c) certificate, we presume that the petitioner's claims are the ones counsel addressed in the motion to withdraw, and petitioner has not challenged either postconviction counsel's or the trial court's assessment of the merits of those claims.

¶ 36        CONCLUSION

¶ 37        Petitioner failed to rebut the presumption of reasonable assistance arising from counsel's Rule 651(c) certificate. We therefore reverse the appellate court's judgment. We affirm the trial court's orders allowing postconviction counsel to withdraw and dismissing petitioner's postconviction petition.

¶ 38        Appellate court judgment reversed.

¶ 39        Circuit court judgment affirmed.