2026 IL App (1st) 240821-U
No. 1-24-0821
Order filed May 22, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 00382 |
| | ) | |
| ROBERTO ESTRADA, | ) | The Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Petitioner failed to rebut the presumption that postconviction counsel provided reasonable assistance.

¶ 2    Postconviction counsel must make necessary amendments to a petitioner's claims. But counsel need not formulate new claims. And when counsel files a Rule 651(c) certificate, we presume counsel did what the rule requires unless the record affirmatively shows otherwise.

¶ 3    Roberto Estrada contends that postconviction counsel provided unreasonable assistance when litigating two claims: one about an exculpatory video, the other involving a DNA expert. Nothing in the record rebuts the presumption that counsel provided reasonable assistance regarding

the video claim. Nor did counsel have a duty to formulate a new, more specific claim regarding a DNA expert. We affirm.

¶ 4                                    Background

¶ 5     Roberto Estrada petitioned for postconviction relief, alleging that trial counsel provided ineffective assistance in multiple ways. The circuit court summarily dismissed the *pro se* petition, but this Court reversed and remanded for further proceedings.

¶ 6     On remand, appointed counsel filed a Rule 651(c) certificate and, later, responded to the State's motion to dismiss. The circuit court granted the State's motion on all but one claim. After an evidentiary hearing, the court denied the remaining claim.

¶ 7     Estrada appeals, contending appointed counsel provided unreasonable assistance when litigating two claims dismissed at the second stage: (i) trial counsel failed to introduce an exculpatory video, and (ii) trial counsel failed to consult with and call a DNA expert.

¶ 8                                    Discovery

¶ 9     The State's discovery included, among other things, a DVD. Trial counsel acknowledged receiving that video exhibit at a pretrial hearing. The disc appears on the State's long-form answer as Inventory no. 12767311 and on the list of exhibits impounded after trial, though no party used it at trial. The disc is not part of this appellate record, so we do not know what is on it.

¶ 10                                    Jury Trial

¶ 11     M.P. testified she was sexually assaulted while waiting for a bus. She never saw her assailant's face because he grabbed her from behind and threw her to the ground. She testified that she fought back and bit his hand as he covered her mouth to stop her from screaming. He fled when a passerby approached.

¶ 12    A neighbor saw what was happening, dialed 911, and went outside to help. As he approached M.P., he saw a man wearing a dark hoodie run away and climb over a chain-link fence into the next yard. The police arrived soon after. The neighbor showed the officers the area where the assailant fled. Officers then discovered two IDs and a cellphone lying in the grass near the fence.

¶ 13    Chicago Police officer Nelson Crespo and his partner arrived to find two men and M.P., who was sitting on a bench. Crespo spoke with the neighbor and searched the area. He recovered a cellphone, a military ID, and an Illinois driver's license from the grass near the fence. Both IDs bore Estrada's name. Sergeant Lessner, who did not testify, arrived after the recovery of the IDs and cellphone.

¶ 14    Chicago police detective Mark Regal and his partner went to the scene, in part to "locate any *** video surveillance camera in the area." Using information from the IDs, they contacted Estrada's sister the following morning. Estrada was not there, so they left their contact information.

¶ 15    That afternoon, Estrada came to police headquarters and spoke to Regal and his partner. Regal advised Estrada of his *Miranda* rights before interviewing him.

¶ 16    Estrada said that, after leaving a bar, a police sergeant stopped his car. The sergeant drove Estrada to a different location and released him. Regal stated that Estrada said he then became involved in two incidents, but "he couldn't tell me which one happened first."

¶ 17    One incident involved a fight with four Latino men, but he was not robbed because "he had his cell phone, his wallet, and his [IDs] after that incident." The other incident occurred when he grabbed "an unknown girl," pushed her to the ground, and ran away. He then hailed a cab and found his car.

¶ 18    Regal asked about specific acts that were committed against M.P. Estrada said he could not remember them, but he could not deny them because he could not remember. Estrada acknowledged that the IDs and cellphone recovered by police belonged to him and said he did not realize they were missing.

¶ 19    Estrada voluntarily provided a DNA sample. The State introduced photographs showing scratches on Estrada's face, knee, elbow, and hands.

¶ 20    DNA evidence recovered from a bite injury on M.P.'s hand revealed a mixture of DNA profiles. The major profile matched M.P., and the results could not exclude Estrada as a contributor to the minor profile. And "approximately 1 in 160 million black, 1 in 7.3 million white, or 1 in 18 million Hispanic unrelated individuals [could not] be excluded from having contributed to the minor male DNA profile."

¶ 21    After the defense called three witnesses to attest to Estrada's good character, Estrada testified. He said that after drinking with friends for several hours, he left a bar on the north side around midnight intoxicated. He decided to drive home, but before reaching the expressway, Chicago police sergeant Stephen Lessner stopped him. Estrada gave Lessner his driver's license and insurance card and admitted he had been drinking. He also gave Lessner his military ID. Lessner ordered him out of the car and patted him down, taking his cellphone and wallet. Lessner then drove Estrada to an unfamiliar neighborhood and lectured him about drinking and driving before telling him to get out.

¶ 22    Estrada began walking but soon got into a fight with four men he encountered on the street. They beat him but eventually "lost interest" and ran away. Estrada hailed a cab and located his car.

He drove to his friend's house, and after no one answered the door, he slept in his car for a while before going to his sister's house.

¶ 23    Estrada's sister gave him Detective Regal's business card. Estrada called Regal and went to the police station. Regal showed him a photograph of a woman who had been attacked the night before and told him that his military ID, driver's license, and cellphone were found at the scene. Estrada denied attacking the woman or telling Regal that he had pushed a woman to the ground.

¶ 24    In rebuttal, Chicago Police detective Edward Heerdt testified that he and Detective Regal interviewed Estrada, who told them he had acted aggressively and pushed a woman to the ground the night before. Estrada said he did not know whether he had sexually penetrated the woman because he could not remember, but he could not deny doing so.

¶ 25    The jury convicted Estrada of four counts of aggravated criminal sexual assault. At sentencing, the trial court merged count one with count three and count two with count four, and sentenced Estrada to two consecutive terms of eight years in prison.

¶ 26                                    Direct Appeal

¶ 27    On direct appeal, Estrada contended the trial court erred at sentencing. This court affirmed. *People v. Estrada*, 2016 IL App (1st) 141674-U.

¶ 28                            Postconviction Proceedings

¶ 29                                i. Original Proceedings

¶ 30    Estrada petitioned for postconviction relief, alleging trial counsel provided ineffective assistance. We focus on three claims.

¶ 31    First, Estrada alleged that trial counsel failed to advise him of his sentencing exposure before he rejected a plea offer.

¶ 32   Second, Estrada alleged that trial counsel was ineffective for failing to introduce an exculpatory video disclosed in discovery. ("There is a video in the Discovery that was not shown to Defendant nor at trial.") He attached the page from the report of proceedings showing that trial counsel acknowledged receipt of the video exhibit. Estrada asserted that his mother had viewed the video, and it showed no one at the bus stop during the assault. ("[Defendant's mother] states video does not show Defendant. Also, no crime is shown on the video.") He did not attach an affidavit from his mother, explaining that he could not obtain one because he was incarcerated.

¶ 33   Third, Estrada alleged that trial counsel was ineffective for failing to consult or call an expert witness on DNA evidence because the jury, "hearing only [the] State's [expert] witness, may have weighed inconclusive DNA against" him.

¶ 34   The circuit court dismissed Estrada's petition at the first stage, and Estrada appealed. This court reversed the dismissal, finding the claim about plea bargaining stated the gist of a constitutional violation. *People v. Estrada*, 2021 IL App (1st) 170657-U. We remanded for second-stage proceedings, including the appointment of counsel. *Id.*

¶ 35                                    ii. Remand

¶ 36   On remand, appointed counsel adopted all claims in Estrada's *pro se* petition and filed a 651(c) certificate. Counsel averred:

> "1. I have consulted with the petitioner, Roberto Estrada by mail to ascertain his or her contentions of deprivation of constitutional rights.
>
> 2. I have examined the record of proceedings at the trial, including the common law record, report of proceedings and any exhibits in possession of the Clerk of the Circuit Court.

3. I have made any amendments to the petitions filed pro se that are necessary for an adequate presentation of petitioner's contentions. I am adopting all of the Petitioners pro se motions."

¶ 37    The State moved to dismiss the petition, arguing in part that each claim lacked supporting documentation. As to the video claim, the State argued Estrada "fail[ed] to attach evidence, affidavits, or records that are necessary to support the claim[] or explain their absence." The State maintained that Estrada's "status as a prisoner" did not excuse his failure to support the claim. Likewise, regarding the DNA expert, the State argued Estrada failed to attach an affidavit from a proposed expert or explain the significance of the potential testimony.

¶ 38    Postconviction counsel responded, again adopting Estrada's claims. Concerning the video, counsel reiterated that: (i) Estrada "is relying on his mom's observation of the video," (ii) there "is no attached video or affidavit from the mother," and (iii) Estrada could not "get an affidavit because he is in prison." As for the DNA expert, counsel reiterated that trial counsel was ineffective for "not call[ing] an expert witness to challenge the evidence the state introduced and [relying] solely on cross-examination[.]"

¶ 39    At the hearing on the motion, the circuit court questioned postconviction counsel about the plea-negotiation claim. Counsel acknowledged that he had not attached an affidavit from Estrada. The parties agreed to a continuance for counsel to try to obtain an affidavit from trial counsel.

¶ 40    At the next court date, postconviction counsel stated that he had done everything he could to contact trial counsel but could not obtain an affidavit. The circuit court dismissed nearly all claims, agreeing with the motion to dismiss. The court advanced only the guilty plea claim to an evidentiary hearing.

¶ 41 At the evidentiary hearing, Estrada testified that trial counsel told him about a 10-year plea offer, but he rejected it because he did not commit the offense. In contrast, both trial counsel and the trial prosecutor testified that the State never extended a plea offer. The circuit court denied this final claim, finding, in part, that no plea offer had been made.

¶ 42                                    Analysis

¶ 43 Estrada contends that postconviction counsel provided unreasonable assistance by (i) failing to support the petition with the exculpatory video or an affidavit describing its content and (ii) failing to attach an affidavit from a DNA expert.

¶ 44 The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides criminal defendants an opportunity to collaterally challenge their conviction, sentence, or both, based on a substantial violation of their federal or state constitutional rights. *People v. Edwards*, 2012 IL 111711, ¶ 21. Although no constitutional right exists to counsel during postconviction proceedings, the Act and the Illinois Supreme Court Rules together guarantee counsel provides "reasonable assistance." *People v. Owens*, 139 Ill. 2d 351, 361 (1990). To ensure reasonable assistance, postconviction counsel must: (i) consult the defendant to ascertain their claims, (ii) examine the trial record, and (iii) make any amendments necessary to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 45 Counsel filed a Rule 651(c) certificate attesting that he consulted with Estrada by mail "to ascertain his [] contentions of deprivation of constitutional rights." Counsel also "examined the record of proceedings at the trial, including the common law record, report of proceedings, and any exhibits in possession of the Clerk of the Circuit Court." After considering whether amendments were necessary, counsel adopted all of Estrada's claims. Although filing a Rule

651(c) certificate alone does not establish compliance, it creates a rebuttable presumption that counsel provided reasonable assistance, absent an affirmative showing otherwise in the record. *People v. Schlosser*, 2012 IL App (1st) 092523, ¶ 33.

¶ 46 Estrada bears the burden of overcoming this presumption by demonstrating that counsel failed to substantially comply with the rule. *People v. Addison*, 2023 IL 127119, ¶ 21. We review *de novo* counsel's compliance with Rule 651(c). *People v. Frey*, 2024 IL 128644, ¶ 21.

¶ 47                                    Exculpatory Video

¶ 48 Estrada contends postconviction counsel "did not indicate[] in his filings or on the record[] that he made any attempt to obtain the [exculpatory] video." Further, counsel "fail[ed] to amend the *pro se* petition to include the referenced video, an affidavit from Estrada's mother, or even an affidavit from Estrada himself." We disagree.

¶ 49 The record establishes that the video was part of the trial record. As Estrada alleged in his *pro se* petition, "There is a video in the Discovery that was not shown to Defendant nor at trial." He attached the page in the report of proceedings where trial counsel acknowledged receipt of the video exhibit. Indeed, the State's long-form answer in discovery referenced a DVD, which the State tendered to trial counsel under Inventory no. 12767311. And while it was not played at trial, the DVD appears on the list of impounding exhibits in the circuit clerk's possession.

¶ 50 Reviewing the video satisfied postconviction counsel's duties and obligations under Rule 651(c). The rule exists "to ensure that counsel shapes *the petitioner's claims* into proper legal form and presents those claims to the court." (Emphasis added.) *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). To that end, postconviction counsel averred that he "examined *** any exhibits in possession of the Clerk of the Circuit Court," which included the DVD.

¶ 51    Contrary to Estrada's argument, affidavits from Estrada or his mother would matter only if the video were exculpatory. To conclude otherwise, we would have to *presume* either that (i) the video was exculpatory or (ii) postconviction counsel found the video to be exculpatory. The law and the record permit neither conclusion.

¶ 52    We cannot speculate about the DVD's content because Estrada failed to include the impounded exhibit in the record on appeal. As we often observe, "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). Without the video in the record, there is no factual basis for an affidavit from Estrada or his mother. *Foutch*, 99 Ill. 2d at 392 ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 53    Nor may we speculate that postconviction counsel viewed the video and found it exculpatory. Counsel's Rule 651(c) certificate creates a rebuttable presumption of reasonable assistance, absent an affirmative showing to the contrary in the record. *Schlosser*, 2012 IL App (1st) 092523, ¶ 33. Because the record contains nothing about the video's content, we presume counsel reasonably concluded that it did not exculpate Estrada. *Addison*, 2023 IL 127119, ¶ 21 (noting, petitioner bears burden to overcome presumption of reasonable assistance).

¶ 54    Accordingly, nothing in the record rebuts the presumption, arising from the Rule 651(c) certificate, that no amendment was necessary to support this claim.

¶ 55                                  DNA Expert

¶ 56    Estrada next contends postconviction counsel provided unreasonable assistance by failing to "identify a possible defense expert, attach an affidavit from an expert, or explain the significance of an expert's potential testimony." Again, we disagree.

¶ 57    A petitioner is entitled to reasonable assistance. *People v. Davis*, 156 Ill. 2d 149, 163 (1993) (holding petitioners under Act are "not entitled to the advocacy of counsel for purposes of exploration, investigation[,] and formulation of potential claims"). Although counsel may refine or supplement existing claims, "reasonable assistance" requires that counsel amend a *pro se* petition when necessary to present the petitioner's allegations. *People v. Rials*, 345 Ill. App. 3d 636, 641 (1st Dist. 2003).

¶ 58    Estrada alleged in his *pro se* petition, "[T]rial counsel failed to retain or consult with an expert *** to either rebuke or simplify the [testimony of] the State's DNA expert." As Estrada acknowledges on appeal, the petition did not identify "a particular expert witness who could have testified on his behalf. It did not explain the significance of their potential testimony, how it would have benefitted Estrada's defense, or even how it would have undermined the State's expert's testimony."

¶ 59    The State responds that Estrada bore the initial "obligation to inform counsel with specificity of the identity of witnesses who should have been called in his defense." *People v. Williams*, 186 Ill. 2d 55, 61 (1999) (quoting *People v. Johnson*, 154 Ill. 2d 227, 247-48 (1993)). Estrada "also [had] an obligation to inform counsel generally of the information which such witnesses might have offered at trial." *Id.*

¶ 60    The parties agree the *pro se* claim lacked that information. They disagree on whether postconviction counsel had a duty to formulate some new, more specific claim involving a DNA expert.

¶ 61    Settled caselaw holds that counsel had no duty to formulate a new, more specific claim. *Davis*, 156 Ill. 2d at 163. Absent a showing in the record that Estrada provided specific factual

allegations, we presume counsel fulfilled the duties under Rule 651(c), consistent with the certificate. *Addison*, 2023 IL 127119, ¶ 21 (noting, petitioner bears burden to overcome presumption of reasonable assistance). As pleaded, Estrada's claim was so generalized that no amendment was necessary. That counsel litigated and lost a weak claim does not establish that Estrada received unreasonable assistance. See *Williams*, 186 Ill. 2d at 61-62 (holding, postconviction counsel "clearly had no obligation to seek out a blood-type expert").

¶ 62    Affirmed.