2024 IL App (1st) 220807

Nos. 1-22-0807 & 1-22-1122 (cons.)

Opinion filed March 25, 2024.

First Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Trial Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 13776 |
| | ) | |
| MARTHA JEAN, | ) | The Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion.
Justice Pucinski also specially concurred, with opinion.

OPINION

¶ 1    Defendant Martha Jean appeals from the second-stage denial of her petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant contends her postconviction counsel provided unreasonable assistance by failing to amend her petition to include a proportionate penalties claim under the Illinois Constitution (Ill. Const. 1970, art. I, § 11). We reverse and remand.

¶ 2                        BACKGROUND

¶ 3                *Guilty Plea Hearing & Sentencing*

¶ 4     In August 2010, defendant pleaded guilty, via accountability, in adult criminal court to first degree murder, attempted first degree murder of a peace officer, and armed robbery, all offenses committed when she was 15 years old. See 720 ILCS 5/5-2(c) (West 2004). The record shows defendant was automatically transferred to adult criminal court. See 705 ILCS 405/5-130 (West 2004). Pursuant to the fully negotiated plea agreement, the trial court sentenced defendant to 23 years' imprisonment for first degree murder (count I), a consecutive 20-year term for the attempted murder (count VII) (both No. 05 CR 13777-02), and a 10-year concurrent term for armed robbery (No. 05 CR 13776-02). Although not expressed at the plea hearing, defendant's murder and attempted murder sentences were required by statute to be consecutive. See 730 ILCS 5/5-8-4(a) (West 2004); 730 ILCS 5/5-8-4(d) (West 2010). Defendant was informed she had to serve the murder sentence at 100% and the attempted murder sentence at 85%. Thus, the court admonished defendant that she would be agreeing to a 43-year sentence minus whatever good-time credit she might be entitled to in the future. The trial court also admonished defendant that the applicable sentencing range was 20 to 60 years for first degree murder, 20 to 80 years for attempted first degree murder of a peace officer, and 6 to 30 years for armed robbery.[1] See 720 ILCS 5/8-4(c)(1)(A), 9-1(a)(1), (b), 18-2(a) (West 2004); 720 ILCS 5/8-4(c)(1)(A), 9-1(a)(1), (b), 18-2(a) (West 2010); 730 ILCS 5/5-8-1(a)(1)(a) (West 2004); 730 ILCS 5/5-8-1(a)(1), 5-4.5-20, 5-4.5-25 (West 2010).

¶ 5     The State presented the following factual basis underlying the negotiated plea. On March 26, 2005, defendant and her boyfriend Larry Johnson, along with a cohort including Terrell Jones (age 24) and his girlfriend Tamika Newson (age 18), hatched a plan to rob a man named

[1]There was no discussion on the record of the potential firearm enhancements. See, *e.g.*, 730 ILCS 5/5-8-1(a)(1)(d) (2004) (noting the add-ons of 15, 20, and 25 years for personally discharging a firearm during the murder); 720 ILCS 5/18-2(a)(2) (West 2004) (if the armed robbery is committed with a firearm, 15 years must be added to the prison term).

Darian Randol at gunpoint.[2] Consistent with the plan, defendant and Newson met Randol at an agreed-upon location and approached him as he sat inside his car. Johnson and Jones then approached the car with guns, forcing Randol to strip. They took Randol's money, credit cards, and pornographic DVDs, and the four criminal cohort fled. Randol subsequently identified Johnson, Jones, Newson, and defendant in photo arrays and lineups.

¶ 6 Not long after this armed robbery, the four-person criminal cohort formulated yet another plan to lure a man named Wallace Ross, whom Newson had met in an online chat session just days before, and his friend Derius Williams to an apartment for the purported purpose of partying.[3] In fact, Johnson and Jones planned to emerge from their hiding spot and then tie up the two men, rob them at gunpoint, take them out, and shoot them. Consistent with the plan, Ross and Williams came to the apartment sometime before midnight on March 26, meeting Newson and defendant. As they were in the living room having drinks, Johnson and Jones emerged with guns and tied up Ross and Williams, then robbed them of money. Johnson took Williams downstairs outside the apartment intending to place him in the trunk of the car, but this plan was thwarted when Williams ran away. Williams, who had electrical tape both around his head and binding his hands, ran about a block before falling. Johnson ran up from behind him and shot Williams several times as he lay on the ground.

¶ 7 Meanwhile, on-duty police officer Hugh McCormick, of the Northfolk Southern Railroad, was driving up the street when he observed Johnson shoot Williams.[4] Officer

---

[2]Initially, at the plea hearing, the State incorrectly stated the offense against Randol took place on May 26, 2005. In addition, Newson's name was also spelled "Tamika Newsom" at the plea hearing. The Illinois Department of Corrections website, of which we may take judicial notice, spells her name "Tameka Newson" and provides the dates of birth of both codefendants. See *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 66.

[3]The victim's name is also spelled Darius Williams throughout the record.

[4]An alternative spelling is McCormack. See *People v. Jones*, 2013 IL App (1st) 112923-U, ¶ 2.

McCormick radioed that there was a shooting and began chasing Johnson in his vehicle through an alley onto the street. Officer McCormick then turned his vehicle into a nearby fence, cutting off Johnson's escape route. Officer McCormick exited the vehicle, and Johnson shot him three times, once in the arm and twice in the abdomen. Officer McCormick crawled away with Johnson in pursuit. Officer Al O'Connor was sitting in his car at a light and observed these events. Officer O'Connor exited his vehicle and pointed his weapon at Johnson, yelling "Stop, police," but Johnson fired at Officer McCormick, who fired back, hitting Johnson.[5] Johnson died as a result.

¶ 8     On hearing the shots fired, defendant, Newson, and Jones fled the apartment. Defendant was arrested promptly on March 27 or 28, 2005, and was charged with the armed robbery of Randol (No. 05 CR 13776-02), the murder of Williams, and the attempted murder of McCormick (No. 05 CR 13777-02). She gave a videotaped statement detailing her participation in all these events, at first falsely telling police she was age 19, when in fact she was age 15 (with a date of birth of May 18, 1989).[6] The State entered into evidence transcripts of the videotaped statements as exhibits 1 and 2. In addition, defendant's fingerprints were identified on black electrical tape in the apartment, pieces of which had been used to bind Ross and Williams. Her DNA was also found on a 7-Up bottle.

---

[5]According to *Jones*, 2013 IL App (1st) 112923-U, ¶ 3, it was O'Connor who exchanged the gunfire with Johnson that ultimately killed him.

[6]Several years prior to the plea hearing, in 2007 and 2008, the public defender filed a motion to suppress evidence of defendant's incriminating statements to police and prosecutors, and a hearing was held. At the hearing, counsel strenuously argued that defendant's statements could not be considered valid when she gave them to a number of officers and the prosecution during her interrogations between the morning of when she was arrested on March 27 and March 29 without ever having a guardian, parent, or interested adult present. Although defendant stated that she was age 19 during that time—apparently so the authorities would not call her mother—her age was not verified before she gave any of her statements, and defense counsel argued she did not waive her right to confer with an interested adult. Defendant also argued that her statements were not voluntary because police made threatening comments prior to and during the interrogation. Following evidence and argument, the trial court denied the motion to suppress.

¶ 9    The transcripts of defendant's videotaped statements, entered into evidence, reflected many of these facts, although in much greater detail. The transcript as to the first armed robbery added that defendant (also known as "Little Momma Country") grew up in Florida, where she attained an eighth-grade education. At the time of the offenses, she had only been in Chicago about a month and several weeks, although she had been dating Johnson, who was her reported "boyfriend," for some five to six months. She became acquainted with the codefendants (Newson and Jones) through Johnson and had known them several weeks to a month before the crimes. As to the first crime involving Randol, it was Newson (also known as the "Lady") who came up with the idea to call the party line to find some hustlers or drug dealers for money, and the person contacted turned out to be Randol. In addition, defendant had seen Johnson and Jones with loaded guns ahead of the crime. Once Johnson and Jones approached the car with guns, they directed Newson and defendant to leave, and they did. When the criminal cohort later reunited, Johnson and Jones split the money between only themselves. Defendant explained that she did not get any money because Johnson was her boyfriend and he would supply her with clothing or food if she needed it, so there was "no point" in her having money.

¶ 10    The record on appeal does not disclose the full transcript of defendant's videotaped statement with regard to the second armed robbery/murder victims. What we do have apparently reveals that as to the second offense, defendant informed both Jones and Johnson that the victims (Ross and Williams) were weaponless, and so the armed robbery proceeded. As the men were tying up the victims after robbing them, defendant also stepped back and "held [Jones's] gun up" for a brief period. She then moved one victim's vehicle at Johnson's direction so that Jones and Johnson could "put the boys in the car." At Johnson's direction, she also removed from the

5

vehicle's trunk a speaker box and a jacket. After Johnson and Jones took the two victims downstairs, defendant served as a lookout for cars, consistent with the men's orders.

¶ 11    The parties stipulated to this factual basis, and the trial court confirmed with defendant that she was choosing to plead guilty knowingly and voluntarily, having understood the nature of the charges against her and possible penalties.

¶ 12    At sentencing, defendant entered a written waiver of the presentence investigation report. In aggravation, the State stood on the "agreement." In mitigation, defense counsel pointed out that defendant was a "15-year-old child" and "a runaway from Florida when she met and became the girlfriend of Larry Johnson" and then committed the offenses. Counsel added that defendant did not herself rob or shoot anyone. While she was no doubt present, "her participation is really just being held legally accountable for what Larry Johnson basically did." Counsel noted that the apartment near where the murders took place was Johnson's family home, and Johnson and defendant lived on the upper floor, so her prints would have been there regardless.

¶ 13    Through her attorney, defendant expressed regret to Johnson's family and the officer that these events occurred. In allocution, defendant stated:

> "I take full responsibility for the problems that I've caused and giving the family and my family and myself for the pain that I put myself and everybody that had, you know, to do with a part of this case, and I pray that the family of the victim find it in their heart to forgive me, and also ask just that, you know, I be forgiven by everyone."

The trial court stated that "[f]or purposes of sentencing in this matter, it is clear to me that Miss Jean's age, that there is no adult background in this particular matter. Based upon the facts I've heard, based upon the lack of background, I find the recommendation to be appropriate." The

6

court sentenced defendant as set forth above to a total term of 43 years' imprisonment, minus credit for time served.

¶ 14    In contrast to defendant, codefendant Jones proceeded to a jury trial, and was found guilty of the first degree murder of Williams and defendant's boyfriend, Johnson, as well as the attempted murder of Officer McCormick. He was sentenced to a total term of life imprisonment. Both Newson, who also pled guilty to murder, and defendant testified at Jones's trial. Jones's conviction was affirmed on direct and collateral appeal. See *People v. Jones*, 2013 IL App (1st) 112923-U; *People v. Jones*, 2017 IL App (1st) 142080-U.

¶ 15                    *Motion to Withdraw Guilty Plea*

¶ 16    About a year after the judgment was entered on the negotiated guilty plea, on October 3, 2011, defendant filed a motion to withdraw her plea and vacate the sentence, alleging that her defense counsel was constitutionally ineffective because counsel informed defendant that she "would be receiving a plea for 35 years, 23 years at 100% and 18 at 85%." She alleged that her plea was not knowing and voluntary. Defendant added that her attorney also failed to "do a mental background check," and defendant had stopped taking her medication. Further, defendant alleged that her codefendant (presumably Newson) "should not have been there" because defendant had intended to go to trial but "she intimidated me into taking the plea." The record, however, does not indicate whether Newson was present at defendant's guilty plea hearing. Defendant further stated she had been "locked up" six years and during that time had multiple attorneys; those who worked with her longer than six months had major caseloads.

¶ 17    The trial court denied defendant's motion to withdraw as untimely because "[i]t does not allege any ground not alleged while it was filed later than 30 days."

¶ 18                    *Postconviction Proceedings*

¶ 19    Nearly 10 years after her guilty plea, on July 10, 2020, defendant filed a *pro se* postconviction petition, alleging her 43-year sentence constituted a *de facto* life sentence in violation of the eighth amendment's prohibition on cruel and unusual punishments (U.S. Const., amend. VIII) and that, under *Miller v. Alabama*, 567 U.S. 460 (2012), she was entitled to a new sentencing hearing with consideration of "the special mitigating factors of youth mandated by *Miller.*" She noted she was age 15 at the time of the offenses and had to serve "100 %" of her sentence. Notably, *Miller* held that mandatory life without parole for juveniles under 18 at the time of their crimes violates the eighth amendment, and our supreme court subsequently extended this to *de facto* life sentences of more than 40 years. *Id.* at 479; *People v. Hilliard*, 2023 IL 128186, ¶ 14; *People v. Buffer*, 2019 IL 122327, ¶ 41 ("a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment").

¶ 20    The circuit court advanced the petition to the second stage of proceedings and appointed counsel from the public defender's office to represent defendant. On August 26, 2020, postconviction counsel filed her appearance. On September 29, 2020, counsel appeared before the court at a status hearing. The court inquired whether counsel would be prepared to file an amended petition and an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate in December, to which she replied that it was unlikely, as "[r]ight now we're really backed up." The matter was continued. Months later, on January 19, 2021, counsel noted that she had ordered the transcript and was still waiting on the full record to arrive.[7] She again stated that the "office is pretty backed up right now," so she would be looking at an April date. At a status hearing on

---

[7]Counsel for codefendant Newson, who also took a plea, appeared at this hearing, noting that Newson was 18 at the time of the offenses and had likewise filed a postconviction petition under *Miller*. The State asked to address the cases together given that they were interrelated.

March 16, 2021, counsel requested to have a June date before filing her Rule 651(c) certificate because she went from "20 cases to 45." At the June 2 status hearing, counsel requested another two months due to her caseload. At the August 5 status hearing, counsel noted that *People v. Dorsey*, 2021 IL 123010, had been issued and that she would therefore need to converse with her client. *Dorsey* held that a sentence of 40 years or less in prison, when taking into consideration good-conduct credit, is not a *de facto* life sentence that violates the eighth amendment under *Miller. Id.* ¶ 64; see also *Buffer*, 2019 IL 122327, ¶ 41. Presumably, counsel understood she would have to determine whether defendant's sentence was *de facto* in light of the available sentencing credit.

¶ 21    Following that, counsel stated that she had in fact spoken to defendant about *Dorsey* and defendant "would like to go forward with an 8th Amendment claim, so I'm going to write up something for that by the next court date," and counsel noted she would file an amended petition. In December, counsel stated:

> "I was working on her petition to turn it into an 8th Amendment. I was kind of waiting to see if Dorsey [sic] did a writ of cert to the U.S. Supreme court, and I just - - I have so many things to write right now; so I am asking for a little bit more time."

On January 27, 2022, counsel filed a Rule 651(c) certificate attesting that she had consulted with defendant by phone and mail to ascertain her contentions of constitutional deprivation, in addition to examining the record of the trial proceedings, including the plea and sentencing transcript, researching the applicable case law and statutes. She further attested that she had examined defendant's *pro se* postconviction petition and determined that no further pleadings were necessary to adequately present defendant's "contention of deprivation of his [*sic*] constitutional rights."

¶ 22    The State moved to dismiss the petition, arguing that defendant's sentence was neither a mandatory, nor a *de facto*, life sentence. In support, the State noted that while defendant was required to serve 100% of her 23-year murder sentence, she was only required to serve 85% of her consecutive 20-year attempted murder sentence, resulting in an aggregate term of 40 years with the application of good-conduct credit. This did not include the 1959 days of sentencing credit she earned. The Stated correctly observed that a *de facto* life sentence under *Miller* was one that exceeded 40 years, and it was the actual amount of time an offender must serve that had to be examined under *Dorsey*. See *supra* ¶¶ 19-20. The State further argued that *People v. Jones*, 2021 IL 126432, precluded any relief because, as in *Jones*, defendant's fully negotiated guilty plea waived any constitutional claim, including that of *Miller*, as did the court's use of discretion at sentencing.

¶ 23    The case was set for argument on April 22, and a video writ was issued for defendant to appear as well. On April 22, defense counsel immediately noted there was a First District case issued in February that she wished to examine and she was essentially not prepared for the hearing ("I'm actually going to be asking for a date. There's a case that came out in February that may change how I argue this"). The court noted that the matter was set for argument and "if that case came out in February I don't understand why you're not ready now on it," to which counsel replied: "Judge, I just in doing my research - - I have had so many things to do." The court stated it did not accept that explanation, and defense counsel responded that she had not given the State enough notice or provided it with the aforementioned case. However, defense counsel then stated that she "would be ready if" the State "is ready." The State indicated it was.

¶ 24    Thus, the dismissal hearing proceeded. The State reiterated its arguments in its written motion to dismiss. In response, defense counsel noted that *Dorsey* did not address the

proportionate penalties clause, but another First District appellate court case, *People v. Meneses*, 2022 IL App (1st) 191247-B, *vacated by People v. Meneses*, No. 128305 (Ill. Sept. 28, 2022) (supervisory order), did and, in that case, determined the sentence violated the proportionate penalties.[8] Following some legal sparring with the court, counsel also asserted that she was alleging the plea was involuntary, although she acknowledged there was no assertion that defendant was physically coerced or forced into the plea. Rather, counsel argued the sentence was unconstitutional: "Based on that she couldn't give no waiver of a constitutional - - unconstitutional fact because she didn't know it was unconstitutional." Notably, the *pro se* petition did not expressly argue proportionate penalties or challenge the voluntariness of the plea, nor did counsel amend the petition to reflect these claims. The court took the case under advisement.

¶ 25    In a 16-page written order and an oral pronouncement, the circuit court granted the State's motion to dismiss. The court found there was no allegation in this case that defendant's plea was "anything but knowing and voluntary." The court elaborated that defendant did not allege "her guilty plea resulted from actual innocence, coercion, or some other reason to deviate from contractual principles." Relying on *Jones*, 2021 IL 126432, the court found this made defendant ineligible for postconviction relief under the eighth amendment and the proportionate penalties clause based on waiver and contract principles, although the court noted several times

---

[8]In *Menses*, 2022 IL App (1st) 191247-B, ¶ 4, the defendant filed a successive *pro se* postconviction petition alleging his 60-year sentence imposed on his murder and attempted murder offenses, committed when he was age 16, was disproportionate. This court found the defendant established prejudice sufficient to proceed on the successive postconviction petition, where the trial court stressed the deterrent value of the defendant's long sentence, an improper factor at juvenile sentencing. On September 28, 2022, the supreme court issued a supervisory order directing this court to vacate its judgment and specifically, "the portion of its opinion addressing the proportionate penalties clause and to affirm the circuit court's judgment denying leave to file a successive post-conviction petition." *Meneses*, No. 128305 (Ill. Sept. 28, 2022) (supervisory order).

that the petition did not raise a proportionate penalties claim. The court further found the guilty plea complied with *Miller* and its progeny because the criminal court exercised discretion—considering defendant's age, lack of criminal history, and culpability—when sentencing her to the aggregate term of 40 years, which was not a *de facto* life sentence or violative of the eighth amendment. Last, the court held defendant's sentence did not shock the moral sense of the community or seem cruelly excessive such that it violated the proportionate penalties clause.

¶ 26    Defendant appealed from that judgment dismissing her postconviction petition at the second stage.

¶ 27                            ANALYSIS

¶ 28    The Act provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1 (West 2020); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act provides a three-stage process for the adjudication of postconviction petitions. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). The circuit court must independently examine a *pro se* petition within 90 days of it being filed and docketed. *People v. Suarez*, 224 Ill. 2d 37, 44 (2007). If the court finds the petition frivolous or patently without merit, it must dismiss the petition. *Id.* If the court does not, or if it does not rule upon the petition within 90 days, the petition advances to second-stage proceedings, where counsel may be appointed for indigent defendants and the State may move to dismiss the petition following any necessary amendments. 725 ILCS 5/122-2.1, 122-4, 122-5 (West 2020); *Boclair*, 202 Ill. 2d at 100. At this stage, the court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Bailey*, 2017 IL 121450, ¶ 18. The defendant bears the burden of making that showing. *People v. Pendleton*,

223 Ill. 2d 458, 473 (2006); *People v. Coleman*, 206 Ill. 2d 261, 277 (2002). As such, the postconviction court may hold a dismissal hearing as a part of second-stage proceedings. *People v. Johnson*, 2021 IL 125738, ¶ 27. A petition that is not then dismissed advances to a third-stage evidentiary hearing. *Id.*

¶ 29    Here, as set forth, the petition advanced to second-stage proceedings, where defendant was appointed counsel. Defendant now maintains counsel failed to fulfill her requisite duties of providing reasonable assistance. Indeed, the right to counsel in postconviction proceedings is a matter of legislative grace, and the Act provides for only a "reasonable" level of assistance, which is less than that afforded by the federal or state constitutions. *People v. Frey*, 2024 IL 128644, ¶ 23. To that end, Rule 651(c) requires that counsel consult with the defendant to ascertain her contentions of deprivation of a constitutional right, examine the trial record proceedings, and make any amendments to the *pro se* petition that are necessary for an adequate presentation of the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Pendleton*, 223 Ill. 2d at 472. Postconviction counsel need only investigate and properly present the defendant's claims. *People v. Smith*, 2022 IL 126940, ¶ 29; *Pendleton*, 223 Ill. 2d at 472. In addition, counsel may, but is not required to, raise additional claims on the defendant's behalf. *Frey*, 2024 IL 128644, ¶ 24. Yet, when counsel amends or adds claims to a *pro se* petition, counsel must provide reasonable assistance. *People v. Agee*, 2023 IL 128413, ¶ 46.

¶ 30    Here, counsel filed a Rule 651(c) certificate. The filing of a Rule 651(c) certificate creates a rebuttable presumption that the defendant received reasonable assistance of postconviction counsel, which a defendant can overcome by showing that counsel did not "substantially comply with the strictures of the rule." *Frey*, 2024 IL 128644, ¶ 30; *Smith*, 2022 IL 126940, ¶ 29. Moreover, where counsel fails to comply with Rule 651(c), this court will not

consider the merits of the petition. *People v. Addison*, 2023 IL 127119, ¶ 41; see also *Suarez*, 224 Ill. 2d at 47 (noting it is error to dismiss a postconviction petition on the pleadings where there has been inadequate representation by counsel). We review *de novo* the dismissal of a petition without an evidentiary hearing, as well as whether counsel complied with her duties under Rule 651(c). *Frey*, 2024 IL 128644, ¶ 21; *People v. Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 31    On appeal, defendant concedes that the only substantive claim asserted in her petition had no merit, writing her sentence does not violate the eighth amendment under *Miller* because it "amounts to *exactly* 40 years if she receives every single day of good-conduct credit," which falls short of the bright line rule announced in *Dorsey*. See *supra* ¶ 20. Defendant nonetheless argues that the record rebuts the presumption of her attorney's compliance with Rule 651(c) because postconviction counsel failed to amend her petition to include a proportionate penalties claim, which was necessary for an adequate presentation of her claims. Defendant adds that while counsel failed to amend the claim, she argued it orally before the court, and this too amounts to unreasonable assistance. We agree with this latter contention.

¶ 32    In the recently-issued *Addison*, 2023 IL 127119, ¶¶ 24-25, the postconviction attorney amended the defendant's *pro se* petition to assert only ineffective assistance of trial counsel, but eliminated the previously set-forth claim of ineffective assistance of appellate counsel. The State argued the claims were forfeited. Postconviction counsel did not thereafter amend the petition to reflect ineffective assistance of appellate counsel, a routine amendment that would have overcome the State's forfeiture argument. The trial court thereafter dismissed the petition without reaching the merits of the defendant's claims. Our supreme court concluded that postconviction counsel failed to shape the defendant's claims into proper form, and the record thus rebutted the presumption of reasonable assistance created by the Rule 651(c) certificate,

14

writing: "We fail to see how it can be reasonable assistance of counsel for an attorney to identify claims worth pursuing but then fail to shape them into proper form." *Id.* ¶¶ 25-28. The court held that because the limited duties reflected in Rule 651(c) were not carried out, remand was required regardless of whether the petition's claims had merit, and it would not speculate whether the trial court would have dismissed the petition had counsel performed reasonably. *Id.* ¶¶ 37, 41-42. Notably, the supreme court did not find that postconviction counsel's tenuous statement at the dismissal hearing that " 'perhaps there was the same oversight on the appellate level as the trial counsel had,' " which was in response to the court's queries about forfeiture, sufficiently amended the petition. *Id.* ¶ 11.

¶ 33    For the reasons to follow, we find *Addison* controlling. Here, postconviction counsel orally asserted the proportionate penalties violation, a new substantive claim she believed had merit, which was not reflected in defendant's *pro se* petition. This contradicted her Rule 651(c) certificate. See *People v. Huff*, 2024 IL 128492, ¶ 25 (noting "[c]ounsel's Rule 651(c) certificate created the presumption that no amendments were available"); *cf. Bass*, 2018 IL App (1st) 152650, ¶¶ 14-15 (the record showed Rule 651(c) was fulfilled). Further, the record shows postconviction counsel repeatedly announced that she was overwhelmed with her caseload. At the appointed dismissal hearing in April, counsel initially stated that she was not ready because she wished to examine a case issued in February. When the trial court challenged counsel's lack of preparation, she replied: "Judge, I just in doing my research—I have had so many things to do." Counsel added that she had not provided the State with adequate notice or the aforementioned case. Counsel nonetheless proceeded to argue the merits of the petition, relying primarily on substantive arguments that were simply not reflected in the petition or factually supported. As set forth, counsel argued the proportionate penalties claim and also asserted the

plea was "involuntary," although she acknowledged there was no assertion that defendant was physically coerced or forced into the plea.

¶ 34    As in *Addison*, counsel failed to make a routine amendment to the petition. See 725 ILCS 5/122-2 (West 2020) ("The *petition* shall *** clearly set forth the respects in which [defendant's] constitutional rights were violated. (Emphasis added.)); *Hilliard*, 2023 IL 128186, ¶ 32 (courts are limited to the allegations set forth in the defendant's postconviction petition); *People v. Watson*, 2022 IL App (1st) 192182, ¶ 34 (concluding the defendant forfeited his proportionate penalties claim on appeal by failing to include it in the petition). Moreover, this court has previously held that "Postconviction counsel's statement during the hearing on the State's motion to dismiss does not sufficiently amend the petition and falls below the level of reasonable assistance required by Rule 651(c)." *People v. Schlosser*, 2012 IL App (1st) 092523, ¶ 28; *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 31 (following *Schlosser* and noting, where counsel orally admitted to the court that the defendant's " 'main claim' " included ineffective assistance of appellate counsel, but counsel failed to include that claim in the petition, counsel did not comply with Rule 651(c)). But see *People v. Quezada*, 2024 IL App (2d) 210076-B, ¶¶ 26-28 (finding that although counsel did not amend the petition to overcome procedural bars, counsel was not unreasonable because counsel orally addressed the procedural bars at the dismissal hearing and the court fully considered the issue in its ruling). This holding is consistent with our supreme court jurisprudence requiring that postconviction counsel provide reasonable assistance when she amends or adds a claim to the defendant's *pro se* postconviction petition. *Agee*, 2023 IL 128413, ¶ 46.

¶ 35    We additionally note that Rule 651(c) is not the exclusive mechanism for ensuring reasonable assistance. *Smith*, 2022 IL 126940, ¶ 25. Although not enshrined in Rule 651(c), an

attorney's admitted lack of preparation for the dismissal hearing cannot be considered reasonable. For these reasons, we must reject the State's argument that the Rule 651(c) certificate and the record demonstrate that counsel provided reasonable assistance. *Cf. Huff*, 2024 IL 128492, ¶ 25 (where the defendant failed to rebut the presumption by identifying anything on the record showing counsel failed to make a necessary amendment).

¶ 36    In reaching this conclusion, we must distinguish *People v. Perkins*, 229 Ill. 2d 34, 51 (2007). In *Perkins*, the State filed a motion to dismiss the petition as untimely. The supreme court held that "[a]n adequate or proper presentation of a [defendant's] substantive claims necessarily includes attempting to overcome procedural bars, including timeliness, that will result in dismissal of a petition if not rebutted." *Id.* at 44. In applying this principle to the case at hand, the *Perkins* court noted that the State had raised timeliness in its motion to dismiss, so counsel was fully aware of it, although counsel did not amend the petition. Instead, at the hearing, counsel "in effect argued the delay was not due to [defendant's] culpable negligence," yet the *Perkins* court observed that argument was not particularly compelling. *Id.* at 51. The *Perkins* court concluded the oral argument did not demonstrate there was some other excuse counsel could have raised for the delay in filing, noting there was "nothing in the record to indicate that [defendant] had any other excuse showing the delay in filing was not due to his culpable negligence." *Id.*

¶ 37    Here, unlike in *Perkins* and, as stated, counsel's oral argument encompassed a substantive claim of professed merit that was raised for the first time at oral argument. Although the postconviction court in this case ultimately addressed defendant's proportionate penalties claim, it noted numerous times that defendant did not properly raise the claim in her petition. The claim also lacked any supporting documentation or developed factual argument, contrary to the

17

Act's requirements. See 725 ILCS 5/122-2 (West 2020) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."). Moreover, *Perkins* did not hold that an attorney's oral argument responding to the State's dismissal motion was sufficient to amend a postconviction petition, but rather, that the record in that case did not demonstrate any valid excuse as to the untimely petition; consistent with the Rule 651(c) certificate, counsel had nothing else to argue. See *Huff*, 2024 IL 128492, ¶ 24 (citing *Perkins*, 229 Ill. 2d at 50, and noting that with the Rule 651(c) certificate, "[i]t is presumed from the lack of an amendment that there were none to be made"); *People v. Lighthart*, 2023 IL 128398, ¶ 72 (citing *Perkins*, 229 Ill. 2d at 49, and noting that "this court has held Rule 651(c) [citation] requires counsel to amend an untimely *pro se* petition to allege any available facts necessary to establish that the delay was not due to the [defendant's] culpable negligence"). In contrast to *Perkins*, remand in this case is necessary.

¶ 38     The State nonetheless challenges our remand, contending that the fully negotiated guilty plea barred defendant from raising a proportionate penalties claim in her postconviction petition and notes that defendant failed to raise the matter earlier. At the outset, we must disagree.

¶ 39     First, *Addison*, 2023 IL 127119, ¶¶ 35, 41, 44, makes clear that where postconviction counsel fails to comply with Rule 651(c) to provide reasonable assistance, remand is required regardless of whether the claims have merit. See *People v. Madison*, 2023 IL App (1st) 221360, ¶ 48 (same). This is because "where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized." *Suarez*, 224 Ill. 2d at 51. We find State's argument improperly encompasses the merits of the proportionate penalties claim, which should not be considered at this juncture.

¶ 40    Second, we decline to speculate what could have been argued or expanded upon where the record demonstrates counsel was unreasonable. See *People v. Turner*, 187 Ill. 2d 406, 416 (1999). The State's arguments on appeal do not take into consideration that reasonable counsel might have further developed the record, attached documentation, or discovered additional claims. See *Hilliard*, 2023 IL 128186, ¶ 27 (noting as-applied constitutional claims cannot be raised without a sufficiently developed evidentiary record). Likewise, "[d]ifferent counsel may differ in their opinions regarding the merits of the petition." *Huff*, 2024 IL 128492, ¶ 29. For example, reasonable representation might have revealed an ineffective assistance of plea counsel claim: *i.e.*, plea counsel's erroneous sentencing advice that the plea was a better option than challenging defendant's almost *de facto* life sentence in adult criminal court as disproportionate on these facts, rendered defendant's guilty plea involuntary. See *People v. Brown*, 2017 IL 121681, ¶¶ 25, 48 (noting a criminal defendant has the right to effective assistance of counsel when entering a guilty plea and, further, the decision of whether to plead guilty involves assessing the respective consequences of a conviction after trial and by plea, as well as the circumstances surrounding the plea); *People v. Boyd*, 2018 IL App (5th) 140556, ¶¶ 15, 23 (a defendant may challenge the constitutionality of her guilty plea by asserting it was not made voluntarily or with full knowledge of the consequences, such as where a defendant pleads guilty based on inaccurate information from plea counsel); *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 32 (the defendant must establish he was provided with ineffective assistance to demonstrate the plea was involuntary).

¶ 41    Relying on our supreme court's recent decision in *Jones*, the State further insists that the fully negotiated guilty plea effectively waived all nonjurisdictional errors and so postconviction counsel could not, in good faith, have advanced a proportionate penalties claim on defendant's

behalf. See, *e.g.*, *People v. Johnson*, 2022 IL App (3d) 180357-B, ¶ 10 (without any issue raised as to reasonable assistance, holding that, following dismissal of his successive postconviction petition, the juvenile's guilty plea waived any challenge to his life sentence under both *Miller* and the proportionate penalties clause). We reject these arguments for several reasons.

¶ 42    As stated, these arguments touch on the merits of this case. That aside, second, we find *Jones*, 2021 IL 126432, distinguishable. There, the 17-year-old defendant entered a negotiated guilty plea of 50 years' imprisonment for a single count of murder (the State dropped the second murder count, thereby precluding the mandatory life sentence). The defendant subsequently challenged a mandatory sentencing scheme that was never actually applied to him due to the plea agreement. The *Jones* court noted, "[i]f the statutory sentencing scheme had actually been applied in this case to set [defendant's] life sentence, [defendant's] argument would have presented a claim that we could have reviewed on its legal merits." *Id.* ¶ 18. In this case, unlike in *Jones*, the proportionate penalties claim attacked defendant's *actual* sentence, not a hypothetical one, which was at minimum 40 years. See *supra* ¶ 4 ; 730 ILCS 5/5-8-4(a) (West 2004); 730 ILCS 5/5-8-4(d) (2010).

¶ 43    The supreme court in *Jones* also held: "By entering a plea agreement, a defendant forecloses any claim of error. It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, *including constitutional ones*." (Emphasis in original and internal quotation marks omitted). *Jones*, 2021 IL 126432, ¶ 20. The court reasoned that plea agreements are contracts "and principles of waiver apply equally to them," noting further that while a defendant might gain a present benefit by pleading guilty, he or she risks forgoing any future favorable legal developments. *Id.* ¶ 21. Accordingly, the court concluded that the defendant's knowing and voluntary guilty plea had waived any constitutional challenge based on

subsequent changes in the law. *Jones* also concluded that the plea court had discretion at sentencing, which precluded the defendant's eighth amendment *Miller* claim.

¶ 44    While we acknowledge the well-settled principles set forth in *Jones*, there, unlike in the present case, neither the parties nor the court suggested that postconviction counsel had provided unreasonable assistance. In addition, generally it is well established that the State may waive waiver at the second stage of proceedings if the petition establishes a deprivation of a constitutional magnitude. *Lighthart*, 2023 IL 128398, ¶ 41; *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003). Moreover, nothing in *Jones* precludes a defendant from advancing a waived constitutional claim. See also *People v. Wells*, 2023 IL 127169, ¶¶ 29-30 (suggesting that although the State did not, it may forfeit an argument as to a fully negotiated guilty plea).

¶ 45    Third, the proportionate penalties clause, although similar to the eighth amendment which was at issue in *Jones*, "is not synonymous."[9] *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 70. The proportionate penalties clause of the Illinois Constitution of 1970 states: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To succeed on a proportionate penalties claim in this instance, defendant had to demonstrate that "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." (Internal quotation marks omitted.) *Hilliard*, 2023 IL 128186, ¶ 20; *Gipson*, 2015 IL App (1st) 122451, ¶ 69.

_____

[9]The State references *In re Rodney H.*, 223 Ill. 2d 510, 518 (2006), in support of its argument that *Jones* also forecloses defendant's proportionate penalties claim. *Rodney H.* concluded "[o]ur proportionate penalties clause is coextensive with the cruel and unusual punishment clause." *Id. Gipson* already addressed and rejected a similar argument, concluding, "it appears the court meant only that like the eighth amendment, the proportionate penalties clause does not apply unless a penalty has been imposed." *Gipson*, 2015 IL App (1st) 122451, ¶ 70; see also *Rodney H.*, 223 Ill. 2d at 521 (determining that the petition for adjudication of wardship was not a direct action by the state to inflict punishment, foreclosing application of the proportionate penalties clause and the eighth amendment).

"Punishments satisfying this standard have not been delineated because 'as our society evolves, so too do our concepts of elemental decency and fairness which shape the "moral sense" of the community.' [Citation.] A court reviews 'the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency.' " *Hilliard*, 2023 IL 128186, ¶ 20.

A defendant bringing an as-applied challenge to a mandatory sentencing statute must overcome the presumption that the statute is constitutional by clearly establishing that the statute is invalid as applied to him or her. *Id.* ¶ 21. As such, an inquiry must be made into both the defendant's conduct and the defendant's character, with the objective of restoring the defendant to useful citizenship. *Gipson*, 2015 IL App (1st) 122451, ¶ 72.

¶ 46    From the record before us, we know that defendant was age 15 and "a runaway from Florida when she met and became the girlfriend of Larry Johnson" and at the time of the crimes, as plea counsel stated at sentencing. Defendant allegedly had met Johnson online while living in Florida and moved with him to Indianapolis and then Chicago. Defendant, while a participant in planning the armed robberies and murder, never wielded a gun, except once at codefendant Jones's direction. She also did not shoot anyone. Rather, her 20-year-old boyfriend and codefendant Jones were principally responsible for the crimes. As defendant now notes, there is some indication that defendant was herself a crime victim, since she was 5 years younger than her 20-year-old boyfriend. See 720 ILCS 5/12-15(c) (West 2004) (defining criminal sexual abuse as "an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was less than 5 years older than the victim"); *id.* § 12-16(d) (defining aggravated criminal sexual abuse as "an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused

was at least 5 years older than the victim"). Defendant had no criminal background, although she was admittedly arrested numerous times in Florida, and significantly, she waived the presentence investigation report. The record nonetheless reveals that between the time defendant was arrested in 2005 and pleaded guilty in 2010, she remained at the juvenile detention center under court order. There, she allegedly took classes towards obtaining her high school degree and was reportedly "highly revered by the staff" and served "as a mentor to other young residents."

¶ 47    Defendant was also tried in adult criminal court for her crimes committed at age 15; this practice has since prospectively shifted towards trying juveniles in juvenile court. See 705 ILCS 405/5-120 (West 2022). The confluence of the adult criminal court, the accountability statute (which effectively bars courts from considering the offender's degree of participation in the crime), and the mandatory consecutive sentence thus limited the court's sentencing considerations and the weight given to various factors. See *People v. Miller*, 202 Ill. 2d 328, 340-41 (2002); *Gipson*, 2015 IL App (1st) 122451, ¶ 75; 730 ILCS 5/5-8-4(a) (West 2004); 730 ILCS 5/5-8-4(d) (2010); 720 ILCS 5/5-2(c) (West 2004); *cf.* 730 ILCS 5/5-4.5-105 (West 2022) (noting present juvenile sentencing factors). These facts, at a minimum, support a proportionate penalties claim, contrary to the State's argument otherwise, although counsel did not argue them at the dismissal hearing. See *supra* ¶ 33 (distinguishing *Huff*); *Hilliard*, 2023 IL 128186, ¶ 27 (noting as-applied constitutional claims cannot be raised without a sufficiently developed evidentiary record); see, *e.g.*, *People v. Aikens*, 2016 IL App (1st) 133578, ¶¶ 37-38 (finding the as-applied mandatory sentencing scheme, which included a 20-year mandatory firearm enhancement and resulted in a 40-year sentence, violated the proportionate penalties clause, where the defendant committed attempted murder at age 17 but without any criminal history and great potential for rehabilitation).

¶ 48 The State also asserts that it would be unreasonable for counsel to amend the petition to assert a *Miller*-based proportionate penalties claim when defendant was not subject to a *de facto* life sentence. (We note parenthetically that defendant contends on appeal, and the State does not dispute this contention, that if defendant "were to lose *a single day* of good-time-credit, her sentence would cross the 40-year line" to become a *de facto* life sentence). The supreme court has cautioned against relying on a certain line of *Miller*-based cases to argue an as-applied proportionate penalties claim because they were specifically directed at mandatory life sentences. See *Hilliard*, 2023 IL 128186, ¶ 28 (and cases cited therein). However, the court also noted that the eighth amendment and *Miller* jurisprudence are distinct from our state proportionate penalties clause. Under the proportionate penalties clause, a defendant may raise an as-applied challenge to a sentence of any length. *Id.* ¶ 29. The Illinois Constitution does not limit a proportionate penalties challenge to just individuals with life sentences. *Id.* Thus, a defendant is not precluded from arguing a 40-year sentence, combined with distinct facts, could be disproportionate under our state constitution, and similarly, a circuit court is not precluded from considering such a claim. See *id.*

¶ 49                                   CONCLUSION

¶ 50 For the reasons set forth, we reverse the judgment of the circuit court on the basis of unreasonable assistance of postconviction counsel. As a result, we need not reach any additional alternative claims raised in defendant's appeal. We remand the cause, and defendant must be given an opportunity to replead her postconviction petition with the benefit of reasonable assistance of counsel. See *Addison*, 2023 IL 127119, ¶¶ 41, 44. We express no opinion on the merits of defendant's postconviction claims or whether an evidentiary hearing is appropriate in this case.

¶ 51   Reversed and remanded.

¶ 52   JUSTICE PUCINSKI, specially concurring:

¶ 53   This 15-year-old defendant participated in a terrible crime, and nothing can relieve the pain of the victims and their families. However, how a 15-year-old came to be interrogated by police without an interested adult present remains a sad mystery. In a state where children under the age of 18 still cannot get married, buy cigarettes or alcohol, enlist in the military, purchase guns, or sign contracts, it is impossible to find the interrogation of this child acceptable.

*People v. Jean*, 2024 IL App (1st) 220807

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 05-CR-13776; the Hon. Alfredo Maldonado, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Erin Sostock, and Christopher L. Gehrke, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Su Wang, and Caitlin Chenus, Assistant State's Attorneys, of counsel), for the People. |