2025 IL App (1st) 231024-U

No. 1-23-1024

Order filed April 18, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 19414 |
| | ) | |
| EDDIE DOUGLAS, | ) | Honorable |
| | ) | Tiana Blakely, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Tailor and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the second-stage dismissal of defendant's petition for postconviction relief where he failed to make a substantial showing that he received ineffective assistance of trial counsel or establish unreasonable assistance of postconviction counsel.

¶ 2    Defendant Eddie Douglas appeals from the second-stage dismissal of his petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, he asserts that his petition made a substantial showing that trial counsel provided

ineffective assistance by failing to introduce evidence to support defendant's alibi defense. In the alternative, he argues that appointed postconviction counsel provided unreasonable assistance by (1) failing to support the ineffective assistance claim with additional documentation and (2) adding an unsupported claim that trial counsel failed to introduce evidence of the time of a 911 call. We affirm.

¶ 3     Following a jury trial, defendant was found guilty of attempted first degree murder and home invasion and sentenced to 20 years' and 10 years' imprisonment, respectively, to be served consecutively. The underlying facts are set forth in the decisions on direct appeal and will be repeated here only briefly. See *People v. Douglas*, 2017 IL App (1st) 122397-U; *People v. Douglas*, 2019 IL App (1st) 122397-UB.

¶ 4     At trial, Isidra Martinez testified that defendant was her ex-husband. In April 2007, defendant moved out of her home in Calumet City and into his mother's home, "five minutes" away. On October 21, 2007, Martinez was at home with her parents and children. She went to sleep in her basement bedroom, which she shared with her son, around 10 p.m. She was woken up by a noise close to 5 a.m. She went to investigate the noise in the hallway, and someone hit her on the head. She hit the person in the head and chest. The person smelled like defendant. During the fight, Martinez "blanked out for a minute" before witnessing the person running up the basement stairs. The light illuminating the stairs allowed her to see his build and facial structure, and she recognized him as defendant.

¶ 5     Martinez screamed for help and ran to her bedroom to retrieve a knife. Her son, who had woken up, was staring at her stomach, and Martinez notice a "bulge" that was bleeding. Martinez

dropped the knife, held a pillow to her stomach, and called 911 on the landline phone. She also grabbed her cell phone to call her mother and inform her that someone was in the home.

¶ 6    The State then played a recording of the 911 call, which is included in the record on appeal and has been reviewed by this court. On the recording, an automated voice states, "conversation recorded on October 22, 2007, at five O six."[1] Screaming can be heard. Martinez tells the 911 operator that "someone is in [her] house," and that she had been stabbed. She can also be heard relaying the information to her mother. Martinez also tells the operator that she could not see the person at the moment because she was in her room in the basement. About three minutes into the call, Martinez tells the operator that the offender is her ex-husband, Eddie Douglas, and that he is still in her house. Police arrive and ask her if he is still in the home; she replies, "I don't know."

¶ 7    Lillie Ajao, Martinez's mother, testified that at around a "quarter to five" on October 22, 2007, Ajao was woken up by noise and heard someone running through the home. Martinez called her and told her that someone, whom Martinez thought was defendant, was in the home.

¶ 8    Calumet City police detective Mitch Growe testified that he conducted a walk-through of the house on October 22, 2007. Under the bed near a window in the room where defendant allegedly entered, Growe observed a black knit hat with eye holes cut akin to a "makeshift ski mask." A forensic scientist testified that the DNA swab of the black hat showed a DNA mixture of two people, and the major profile matched defendant's DNA.

---

[1] The CD containing the recording of the 911 call comprises 72 individual audio files. Defendant, in his brief on appeal, asserts that "[i]t is not clear" which audio files were published. We note that the first audio file begins with the automated voice stating the date and time, immediately followed by the beginning of Martinez's conversation with the operator. Nothing in the report of proceedings suggests that the recording of the 911 call was not published from the beginning of the call.

¶ 9     Defendant called Doreen Pierce, his colleague at the Baymont Inn. She testified that defendant arrived at work at around 6:30 p.m. on October 21, 2007, and left at around 4:30 a.m. on October 22, 2007. Defendant called Pierce at 5:05 a.m., which she knew because she was "[l]ooking at the clock" when the phone rang.

¶ 10    Louise Douglas, defendant's mother, testified that defendant returned home from working at the Baymont Inn at around 4:45 a.m. on October 22, 2007. He looked as "usual," and she did not notice any scratches or bruises. He went to his room, and she heard him talking on the phone.

¶ 11    The jury found defendant guilty of attempted first degree murder and home invasion.

¶ 12    On July 25, 2011, trial counsel filed a motion to vacate the verdict of guilty or in the alternative grant a new trial. On October 21, 2011, counsel filed a motion to withdraw due to his license to practice law being suspended. On November 4, 2011, new counsel filed an appearance on defendant's behalf. On May 1, 2012, new counsel filed a motion for a new trial alleging, *inter alia*, that trial counsel was ineffective for failing to introduce records of defendant's call to the Baymont Inn after he left work as well as Martinez's 911 call records. On June 25, 2012, the circuit court denied the motion.

¶ 13    Defendant was sentenced to 20 years' imprisonment for attempted first degree murder and 10 years' imprisonment for home invasion, to be served consecutively.

¶ 14    On direct appeal, defendant alleged that (1) the trial court erred in not giving a jury instruction regarding the police failing to preserve surveillance footage from the Baymont Inn; (2) he was denied a fair trial due to the prosecutor calling him "garbage" in rebuttal closing argument; and (3) the State concealed the existence of a knife that police recovered from Martinez's home

seven months before trial. *Douglas*, 2017 IL App (1st) 122397-U, ¶ 2. This court remanded for an evidentiary hearing regarding the knife and retained jurisdiction over the appeal. *Id*. ¶ 25.

¶ 15    On February 23, 2018, after an evidentiary hearing, the circuit court concluded that lab reports regarding the knife as well as a DVD with pictures of the knife had been tendered to trial counsel. The reports showed that no blood was indicated on the knife, but hair, fibers, and debris were observed. The cause returned to this court on appeal, and defendant's convictions were affirmed. *Douglas*, 2019 IL App (1st) 122397-UB.

¶ 16    On June 15, 2020, defendant filed *pro se* a petition for postconviction relief alleging that trial counsel failed to introduce phone records supporting the alibi theory that defendant called the Baymont Inn at 5:06 a.m. from his mother's home, the same time Martinez called 911 and reported that defendant was in her home. According to defendant, these records would have made it "much more likely" for the jury to find that he was not the offender, particularly where Martinez never stated she saw or heard the offender using a phone during her 911 call and Pierce never stated she overheard screaming or "sounds consistent with a man running from the scene of a crime."

¶ 17    Defendant attached (1) his Sprint phone records detailing that he made a call at 5:06 a.m. on October 22, 2007; (2) a letter from original trial counsel stating he had obtained the phone records; (3) defendant's affidavit averring that he received a letter from counsel detailing that counsel had obtained the phone records showing that defendant called a number, identified by defendant as that of the Baymont Inn, at 5:06 a.m. on October 22, 2007; and (4) the 2019 appellate decision. On the Sprint phone records, the only entry visible is for the 5:06 a.m. call. The portion of the entry stating the length of the call is illegible. The entry states that the "Call Destination"

was "Calumet Cy, IL," but it does not state the location of defendant's phone when the call was placed.

¶ 18    On October 20, 2020, the petition was docketed for second-stage proceedings and postconviction counsel was appointed.

¶ 19    On July 13, 2022, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) stating:

> "1. I have consulted with the petitioner, Eddie Douglas, by phone, mail, electronic means or in person to ascertain his contentions of deprivation of constitutional rights.
>
> 2. I have examined the record of proceedings at the trials [*sic*], including the common law record, report of proceedings and any exhibits in possession of the Clerk of the Circuit Court.
>
> 3. I have made amendments to the petition filed *pro se*, *** necessary for an adequate presentation of petitioner's contentions."

¶ 20    That same day, postconviction counsel also filed a supplemental petition to "augment" defendant's *pro se* claim as well as arguing that trial counsel failed to investigate a timeline of events by obtaining call logs and phone records from Martinez and the 911 call center. Postconviction counsel also alleged that appellate counsel failed to raise on appeal trial counsel's ineffectiveness as alleged in the postconviction petitions. Postconviction counsel attached both appellate decisions and a police report detailing that the incident was reported at 5:06 a.m. on October 22, 2007.

¶ 21    On September 27, 2022, the State filed a motion to dismiss the petition alleging that (1) trial counsel's decisions regarding what evidence to present were matters of trial strategy; (2) the

petition lacked evidentiary support as "the records [were] not attached to the petition"; (3) the issues presented were barred by *res judicata* and waiver as they were either presented in the motion for a new trial or should have been raised on direct appeal; and (4) appellate counsel was not ineffective for failing to raise the ineffective assistance of trial counsel claims on appeal.

¶ 22    On May 12, 2023, the court granted the motion to dismiss, concluding that trial counsel's decision not to introduce the phone records was a matter of trial strategy and defendant failed to show how he was prejudiced by that decision. Furthermore, defendant could not successfully claim trial counsel's ineffectiveness as the phone records were "missing from the petition." Concerning the 911 call, the court found that the police report attached to the petition and the evidence elicited at trial detailing when the incident was reported sufficiently provided the time of the call. The court also found that because the underlying issue of trial counsel's ineffectiveness was without merit, defendant did not show that appellate counsel was ineffective.

¶ 23    On appeal, defendant first argues that he made a substantial showing that trial counsel provided ineffective assistance by failing to introduce evidence of defendant's phone call to the Baymont Inn and the exact time of the 911 call to support his alibi defense.

¶ 24    The Act allows defendants to challenge their convictions based on an alleged violation of their state or federal constitutional rights. *People v. Jean*, 2024 IL App (1st) 220807, ¶ 28. Postconviction proceedings follow three stages. *Id*. Defendant's petition was dismissed at the second stage. At the second stage, a defendant must make a substantial showing of a constitutional violation. *People v. Zirko*, 2021 IL App (1st) 162956, ¶ 16. Also at this stage, counsel is appointed for indigent defendants and the State may move to dismiss the petition. *Jean*, 2024 IL App (1st) 220807, ¶ 28.

¶ 25   If the State moves to dismiss the petition, the court may not "engage in any fact-finding or credibility determinations" and must take "all well-pleaded facts that are not positively rebutted by the original trial record" as true. *People v. Domagala*, 2013 IL 113688, ¶ 35. If the court determines that a defendant has made a substantial showing of a constitutional violation, the petition proceeds to a third-stage evidentiary hearing. *Id*. ¶ 34. If not, the petition is dismissed. *People v. Tate*, 2012 IL 112214, ¶ 10. A dismissal of a petition at the second stage is reviewed *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 26   In examining ineffective assistance of trial counsel claims, this court follows the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Johnson*, 2021 IL 126291, ¶ 52. A defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance resulted in prejudice. *Id*. To establish prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*.

¶ 27   Decisions regarding what evidence to present are matters of trial strategy, which are "generally immune" from claims of ineffective assistance of counsel. *Dupree*, 2018 IL 122307, ¶ 44; *People v. Williams*, 2017 IL App (1st) 152021, ¶ 38. To prevail on a claim based on trial strategy, a defendant must establish that counsel's strategy was "so unsound that counsel entirely failed to conduct meaningful adversarial testing of the State's case." *People v. Elliott*, 2022 IL App (1st) 192294, ¶ 37. If it is easier to dispose of an ineffective assistance of counsel claim on the ground that it lacks sufficient prejudice, then a court may "proceed directly to the second prong and need not determine whether counsel's performance was deficient." *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 28    To start, this court notes that the circuit court dismissed defendant's petition based in part on defendant failing to attach the relevant documentation for his claim, *i.e.*, the phone records detailing that he made a call on October 22, 2007. We note that defendant did in fact attach records from Sprint detailing that he made a phone call at 5:06 a.m. on October 22, 2007, and thus, the claim was supported with documentation. However, the court also determined that defendant failed to establish that trial counsel was objectively unreasonable for not introducing the records and that defendant did not establish how he was prejudiced by that decision.

¶ 29    Here, defendant has failed to show how he was prejudiced by counsel's decision not to introduce his phone records at trial. Defendant's alibi theory was premised on him calling the Baymont Inn a little after 5 a.m. on October 22, 2007, from his mother's home. While the Sprint records attached to defendant's petition detail that defendant made a phone call at 5:06 a.m. on October 22, 2007, the records do not indicate from where the call was placed. Therefore, the records would not have supported the alibi defense that defendant was at his mother's home when he made the call. Furthermore, evidence of defendant placing a call around that time was elicited at trial through Pierce's and Douglas's testimony. As a result, additional evidence of defendant's call that did not establish that he was at his mother's home at the time of the call would not have made it reasonably probable that the result of the trial would have been different. *Johnson*, 2021 IL 126291, ¶ 52.

¶ 30    Concerning the 911 call, evidence of the exact timing of the call was introduced at trial through the automated voice on the 911 recording that immediately preceded the beginning of Martinez's conversation with the operator. In any event, however, Martinez told the operator that defendant stabbed her and was still in the house at the time of the call and, as explained, the Sprint

records do not support defendant's alibi theory that he was elsewhere. As a result, defendant suffered no prejudice from additional evidence of the exact time of that call not being introduced at trial.

¶ 31   Defendant next argues that, in the alternative, postconviction counsel provided unreasonable assistance by (1) failing to support the ineffective assistance claim with additional documentation of defendant's call and (2) adding an unsupported claim that trial counsel failed to introduce evidence of the time of the 911 call.

¶ 32   In postconviction proceedings, the right to counsel is statutory, not constitutional. *People v. Carson*, 2024 IL App (1st) 221644, ¶ 17. Postconviction counsel is required to render "reasonable assistance," a standard which is "less than that afforded by the federal or state constitutions." (Internal quotation marks omitted.) *Id*. Postconviction counsel's purpose is not to "protect postconviction petitioners from the prosecutorial forces of the State but to shape their complaints into the proper legal form and to present those complaints to the court." *People v. Addison*, 2023 IL 127119, ¶ 19.

¶ 33   To ensure reasonable assistance, Rule 651(c) provides that counsel must (1) consult with the defendant by phone, mail, or other means to ascertain the defendant's contentions; (2) examine the record of the proceedings at trial; and (3) make the necessary amendments to the *pro se* petition to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Substantial compliance with this rule is required. *Addison*, 2023 IL 127119**,** ¶ 21. Counsel may file a certification that he or she complied with the rule, or the record as a whole may demonstrate compliance. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *People v. Perkins*, 229 Ill. 2d 34, 50 (2007).

¶ 34 Once counsel files a Rule 651(c) certificate, a rebuttable presumption that counsel provided reasonable assistance arises, and the defendant bears the burden of overcoming that presumption by showing that counsel did not substantially comply with the rule. *Addison*, 2023 IL 127119, ¶ 21. Whether postconviction counsel substantially complied with Rule 651(c) is reviewed *de novo*. *Jean*, 2024 IL App (1st) 220807, ¶ 30.

¶ 35 Here, postconviction counsel filed a Rule 651(c) certificate stating that he consulted with defendant, reviewed the trial file including the common law record and transcripts, and filed a supplemental petition augmenting defendant's *pro se* petition with additional claims and support. Therefore, there exists a rebuttable presumption that postconviction counsel substantially complied with Rule 651(c) and provided reasonable assistance.

¶ 36 Defendant argues that postconviction counsel could have provided further support for both phone calls through a custodian of records verification for defendant's call to the Baymont Inn and call records from the Calumet City Police Department or the 911 operator system.

¶ 37 As discussed, postconviction counsel's supplemental petition augmented defendant's *pro se* petition with additional claims of ineffective assistance of trial counsel for failure to introduce the exact timing of the 911 call and ineffective assistance of appellate counsel. Defendant sufficiently supported his *pro se* claim of ineffective assistance of trial counsel for failure to introduce defendant's phone records in support of his alibi defense by attaching the Sprint records. As a result, additional documentation through custodial verification of the records would not have bolstered defendant's alibi defense of being at his mother's home at the time of the call to the Baymont Inn. Therefore, postconviction counsel did not render unreasonable assistance in failing to attach such records.

¶ 38    Furthermore, postconviction counsel supported the additional claim of ineffective assistance of trial counsel for failure to introduce the exact timing of the 911 call through a police report establishing the time the incident was reported. Moreover, the 911 recording played at trial already established the timing. As a result, postconviction counsel rendered reasonable assistance regarding this claim. Given the above, defendant has failed to overcome the presumption that postconviction counsel rendered reasonable assistance under Rule 651(c). *Addison*, 2023 IL 127119, ¶ 21.

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 40    Affirmed.