**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250066-U

Order filed June 9, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0066 Circuit No. 14-CF-2407 |
| ALOYSIUS A. ALEXANDER, | ) ) ) | Honorable Arkadiusz Z. Smigielski, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Presiding Justice Hettel and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The circuit court properly dismissed defendant's postconviction petition at the second stage when defendant's claims were barred by *res judicata*; postconviction counsel did not provide unreasonable assistance by withdrawing from the matter when defendant's claims did not have merit.

¶ 2     This appeal stems from the dismissal of a postconviction petition filed by defendant, Aloysius A. Alexander. The dismissal occurred after his postconviction counsel filed a motion to withdraw representation and the State filed a motion to dismiss arguing that the claims contained therein were barred by *res judicata*. On appeal, defendant argues that his ineffective assistance of

counsel claim regarding trial counsel's failure to follow through with his motion to substitute Judge Carla Alessio-Policandriotes is not barred by *res judicata* because his petition contained allegations regarding conversations that took place outside of the record. Further, he argues that he made a substantial showing of ineffective assistance of counsel warranting a stage-three evidentiary hearing and that postconviction counsel acted unreasonably when she moved to withdraw from the matter when an arguable claim existed. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2014)), one count aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), and unlawful use of a weapon by a felon (UUWF) (*id.* § 24-1.1(a)).

¶ 5        Defendant filed a *pro se* motion to substitute Judge Daniel J. Rozak as a matter of right on January 15, 2015. Judge Rozak struck the motion, stating that because defendant had counsel any such motion should be filed by his attorney. However, Judge Rozak reassigned the case on his own motion to Judge Sarah Jones nearly a year and a half later on June 9, 2016.

¶ 6        Two different motions for substitution of judge were filed on June 16, 2016. The first, filed by counsel, requested the substitution of both Judge Jones and Judge Alessio-Policandriotes while the second motion, filed by the defendant, only listed Judge Jones. On June 30, Judge Jones sent the matter back to Judge Rozak after noting "a motion was filed on June 16th." On that same day, Judge Rozak reassigned the case to Judge Alessio-Policandriotes. There was no discussion on the record at that time that defendant intended to proceed on the motion that included Judge Alessio-Policandriotes.

¶ 7        Judge Alessio-Policandriotes questioned the timeline of the motions for substitution that had been filed upon defendant's first appearance before her. Counsel indicated that Judge Rozak

2

reassigned the case to Judge Jones on his own motion, and that counsel had now filed the motion for substitution that caused the matter to be assigned to Judge Alessio-Policandriotes.

¶ 8    Following a number of court appearances before Judge Alessio-Policandriotes, defendant waived his right to a jury trial and proceeded to a bench trial before Judge Alessio-Policandriotes. The court found defendant guilty of all counts and sentenced him to consecutive terms of 56 years' imprisonment for murder and 12 years' imprisonment for aggravated battery with a firearm, and a concurrent term of 3 years' imprisonment for UUWF.

¶ 9    Defendant himself filed a motion for a new trial arguing that he received ineffective assistance of counsel because his attorney chose not to file several motions he believed would have been beneficial to his defense. The motion did not assert counsel's failure to proceed with the substitution of Judge Alessio-Policandriotes. The court conducted a preliminary inquiry on defendant's claim pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). While defendant addressed the issues contained in his written motion, he also stated that he had to file his own motion for substitution of judge because counsel would not file it for him. After this allegation, the following exchange took place between defendant and Judge Alessio-Policandriotes:

> "THE COURT: Did you sub out two judges, Judge Rozak and Judge Jones?
>
> THE DEFENDANT: Judges Jones
>
> THE COURT: Okay. And that's why they did not try the case. The matter, I believe, is scheduled before me, correct?
>
> THE DEFENDANT: Correct.
>
> THE COURT: Okay. And those—so your motion regarding substitution of judge was, in fact, addressed?
>
> THE DEFENDANT: Yes."

3

Defendant did not state why his attorney would not file the motion to substitute, even though counsel had already filed a motion to substitute Judges Jones and Alessio-Policandriotes prior to defendant filing his own motion to substitute only Judge Jones. The court discussed defendant's allegations with his attorney and questioned counsel regarding the motion for substitution of judge. They discussed the fact that Judge Alessio-Policandriotes was listed on one of the motions for substitution of judge. The court responded:

> "But when the matter was assigned to me, that was withdrawn. And each and every court date thereafter he consented to the matter to be before the Court. In fact, he waived his trial by—counsel, in fact, he waived his trial by jury and asked for a bench trial in front of me."

The court found that defendant did not meet his obligation in alleging ineffective assistance of counsel and declined to proceed further with the *Krankel* inquiry.

¶ 10 Defendant filed a direct appeal in which appellate counsel argued the circuit court erred by declining to appoint counsel and advancing defendant's claims of ineffective assistance of counsel to a full *Krankel* hearing. *People v. Alexander*, 2019 IL App (3d) 170168, ¶ 33. This court affirmed in part and reversed in part. *Id.* ¶ 40. Specifically, we found that there was no error in not advancing the *Krankel* inquiry to the next stage by appointing counsel and conducting an evidentiary hearing. However, we found that defendant's conviction for UUWF was void and remanded the matter for resentencing. *Id.*

¶ 11 This court specifically addressed defendant's argument regarding the motions for substitution of judge, finding that:

> "At the *Krankel* inquiry, the court asked defendant if his motion for substitution of judge had been heard, and defendant agreed that it had been. Moreover, neither

4

defendant nor counsel ever mentioned substituting Judge Alessio-Policandriotes. There was ample discussion when it was first assigned to her courtroom regarding the procedure by which it was assigned to her. Defendant and counsel had more than enough time to raise the issue if they wanted to. In fact, the only indication on the record that defendant sought to substitute Judge Alessio-Policandriotes was in a motion filed on June 16, 2016. However, the record shows that on that day two motions for substitution of judge were filed. The first motion named Judge Jones and Judge Alessio-Policandriotes; the second motion solely named Judge Jones. Defense counsel could have meant the second motion to supersede the first." *Id.* ¶ 38.

¶ 12         On remand, defendant's sentence was reduced to 47 years' imprisonment for murder, to be served consecutively with 6 years' imprisonment for aggravated battery with a firearm. Defendant filed a postconviction petition arguing that trial counsel was ineffective for failing to object when Judge Rozak assigned the case to Judge Alessio-Policandriotes. The petition alleged that defendant told counsel he did not feel comfortable with his case in front of Judge Alessio-Policandriotes and requested that a motion be filed to substitute both her and Judge Jones. Counsel stated he would file the appropriate motion within the ten-day timeframe, but defendant decided to file his own motion, listing only Judge Jones, in an effort to assist his attorney. When the cause was assigned to Judge Alessio-Policandriotes, defendant alleged that he had a conversation with his counsel and asked why he did not object. Counsel stated that defendant had already substituted two judges— Rozak and Jones—and was not entitled to a third. Defendant argued that he did not raise the issue with the court himself because he "was advised not to address the Court because I was represented by an attorney."

¶ 13    The postconviction petition advanced to the second stage with the appointment of new counsel. Appointed counsel filed a certificate under Illinois Supreme Court Rule 651(c) stating she could not make any amendments that would make defendant's claims not frivolous because the claim was barred by *res judicata*. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). She also filed a motion to withdraw on April 24, 2024, which was granted on July 26, 2024. Defendant filed an amended post-conviction petition on July 26, which mirrored the allegations regarding counsel's statements concerning the assignment Judge Alessio-Policandriotes. The State filed a motion to dismiss the petition on July 30, 2024, arguing that the claim was barred by *res judicata*. Defendant filed a response to the motion to dismiss in which he argued that the issue of the motion to substitute judge was not directly adjudicated on appeal and thus not barred.

¶ 14    After a hearing, the court granted the motion to dismiss. Defendant now appeals.

¶ 15                                II. ANALYSIS

¶ 16    Defendant contends on appeal that the circuit court incorrectly dismissed his second stage postconviction petition under the theory of *res judicata* and that he should have received a third stage evidentiary hearing because he made a substantial showing of ineffective assistance of counsel. He further argues that postconviction counsel was unreasonable because she withdrew representation instead of pursuing his valid claim.

¶ 17                              A. *Res Judicata*

¶ 18    First, defendant argues that he made a substantial showing that trial counsel was ineffective and that the court erred in dismissing his postconviction petition. Under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)), a person imprisoned in the penitentiary may file petitions challenging his conviction on grounds of constitutional violations. Dismissal is

warranted if a court determines that a petition is frivolous or patently without merit. *People v. Boclair*, 202 Ill. 2d 89, 100 (2002).

¶ 19 The Act provides for a three-stage process for adjudicating postconviction petitions. *People v. Beaman*, 229 Ill. 2d 56, 71 (2008). In this case, the petition advanced to the second stage. See 725 ILCS 5/122-6 (West 2024). At the second stage the defendant must make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. The operative inquiry when such a proceeding reaches this stage is whether the facts pled by defendant, if proven true at an evidentiary hearing, would entitle him to relief. *Id.* ¶ 35. This inquiry does not require the court to make any factual findings or credibility determinations. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). A motion to dismiss "raises the sole issue of whether the petition being attacked is proper as a matter of law." *Id.* We review a second-stage dismissal *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 20 Defendant argues that he received ineffective assistance because his attorney allowed the case to be reassigned to a judge listed in the motion for substitution without objection. Section 114-5(a) of the Code of Criminal Procedure of 1963 provides in pertinent part:

> "Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion. The defendant may name only one judge as prejudiced, pursuant to this subsection; provided, however, that in a case in which the offense charged is a Class X felony

7

or may be punished by death or life imprisonment, the defendant may name two judges as prejudiced." 725 ILCS 5/114-5(a) (West 2014).

Here, defendant was charged with murder, a class X felony, and was therefore permitted to move to substitute two judges. *Id.* Despite the record indicating that the defendant himself filed a motion for substitution naming only Judge Jones, he argues that he requested two substitutions, Judge Jones and Judge Alessio-Policandriotes. Further, his counsel was ineffective because he failed to correct the error when the case was set on the trial call of Judge Alessio-Policandriotes and abandoned the motion to substitute her. The State responds that defendant raised this very issue on direct appeal; therefore, defendant's post-conviction claim is barred by *res judicata*.

¶ 21    Issues raised on direct appeal are barred from consideration in a postconviction petition under the doctrine of *res judicata. People v. Kimble*, 348 Ill. App. 3d 1031, 1034 (2004). Those issues which could have been raised in a direct appeal, but were not, are similarly considered waived. *Id.* Exceptions exist for situations where fundamental fairness requires it, the forfeiture is caused by ineffective assistance of appellate counsel, or facts relating to the claim do not appear on the face of the original appellate record. *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005). However, a defendant may not avoid the bar of *res judicata* by simply rephrasing issues that have already been raised. *Kimble*, 348 Ill. App. 3d at 1034 (using different terminology and including additional allegations when the opportunity to fully litigate has already been presented does not circumvent the bar of *res judicata*). When a defendant is precluded by *res judicata* and forfeiture, a petition is necessarily "frivolous" or "patently without merit" and may be dismissed. *Blair*, 215 Ill. 2d at 436.

¶ 22    Here, defendant argued on direct appeal that counsel showed neglect, warranting appointment of new counsel for a *Krankel* hearing. Among other complaints, defendant

specifically mentioned the motion to substitute judge at his preliminary *Krankel* inquiry and in his brief on direct appeal. He did not state why counsel did not file a motion to substitute Judge Alessio-Policandriotes, only that counsel said he would not when defendant asked him to file it. Now, in his postconviction petition, defendant has included additional allegations regarding his conversations with counsel to argue that counsel was ineffective. He now asserts that another conversation with counsel took place in which defendant instructed counsel to object to Judge Alessio-Policandriotes's assignment. His petition further asserts that counsel told him he had already exercised two substitutions as of right and could not substitute another judge. He alleged that he failed to speak up himself when the case was assigned to Judge Alessio-Policandriotes because Judge Rozak, in striking his first *pro se* motion to substitute, told him he could only act through his attorney. We note, however, that this assertion is contradicted by the record. Defendant filed a second motion to substitute on his own, requesting to substitute Judge Jones only, after Judge Rozak struck his initial *pro se* motion. He also raised the motion to substitute Judge Alessio-Policandriotes during the preliminary *Krankel* inquiry and admitted that his motion to substitute had been heard.

¶ 23    As we noted on direct appeal, "[t]here was ample discussion when it was first assigned to [Judge Alessio-Policandriotes's] courtroom regarding the procedure by which it was assigned to her. Defendant and counsel had more than enough time to raise the issue if they wanted to." *Alexander*, 2019 IL App (3d) 170168, ¶ 38. Moreover, "[a]t the *Krankel* inquiry, the court asked defendant if his motion for substitution of judge had been heard, and defendant agreed that it had been." *Id.* The topic of defendant's desire to substitute Judge Alessio-Policandriotes was directly discussed at the *Krankel* inquiry, and when defendant alleged that counsel would not move to substitute Judge Alessio-Policandriotes, he never mentioned the conversation that he now alleges

to have occurred with his counsel. In fact, he did not raise this conversation until after his direct appeal.

¶ 24    The claim of ineffective assistance of counsel for failure to pursue the motion to substitute after Judge Rozak assigned Judge Alessio-Policandriotes was first heard by the circuit court via a preliminary *Krankel* inquiry. On direct appeal, defendant argued that counsel neglected his case by abandoning his motion to substitute Judge Alessio-Policandriotes. The claims contained in his postconviction petition are similarly based on counsel's alleged failures in not pursuing the motion to substitute. The only difference is the additional facts alleged regarding defendant's conversations with his counsel purporting to explain why counsel did not pursue the motion even though he had ample opportunity to present this information to the circuit court. Given that defendant's postconviction claim of ineffective trial counsel is so similar to the issue presented on direct appeal and largely relies on the same set of facts, the appropriate time for defendant to raise all his allegations of ineffective assistance of trial counsel was on direct appeal. Defendant had the opportunity to pursue his ineffective assistance claim at that time.

¶ 25    As already established, a defendant cannot avoid *res judicata* by simply rephrasing a prior claim that was addressed on direct appeal. See *supra* ¶ 22; see also *Kimble*, 348 Ill. App. 3d at 1034. Moreover, a defendant may not circumvent the *res judicata* doctrine by including additional facts and allegations that were encompassed by a previously adjudicated issue. *Kimble*, 348 Ill. App. 3d at 1034. "To hold otherwise would encourage defendants to not state all of the allegations in support of an argument so they could avoid summary dismissal of their postconviction petition based on *res judicata*." *Id.* Given that defendant's ineffective assistance of trial counsel argument was already addressed on direct appeal, defendant cannot now add additional allegations of off-the-record conversations in order to resuscitate his claims. For this reason, we find that the doctrine

of *res judicata* prevents defendant from relitigating his claims related to counsel's effectiveness regarding the motion to substitute. Accordingly, the circuit court did not err in dismissing defendant's postconviction petition.

¶ 26                     B. Unreasonable Assistance of Postconviction Counsel

¶ 27        Next, defendant argues that he received unreasonable assistance of postconviction counsel because he had an "arguably" meritorious claim which counsel had a duty to pursue by amending his petition to further the claim and could not withdraw.

¶ 28        There is no constitutional right to assistance of counsel during postconviction proceedings. *People v. Custer*, 2019 IL 123339, ¶ 30. The right to counsel in postconviction proceedings is wholly statutory and requires that counsel provide a " 'reasonable' level of assistance." *People v. Flores*, 153 Ill. 2d 264, 276 (1992); 725 ILCS 5/122-4 (West 2024). This level of assistance is "a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Custer*, 2019 IL 123339, ¶ 30.

¶ 29        Illinois Supreme Court Rule 651(c) outlines the specific duties of appointed counsel in postconviction proceedings to ensure postconviction counsel provides an acceptable level of assistance. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Rule 651(c) requires that the record in these proceedings demonstrate that appointed counsel "has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." *Id.* Compliance with the rule is mandatory. *People v. Perkins*, 229 Ill. 2d 34, 50 (2007). Its purpose is to ensure that postconviction counsel amends the defendant's claims into proper legal form and effectively argues them to the court. *Id.* at 44. Amendments that would "only

11

further a frivolous or patently nonmeritorious claim *** are not 'necessary' " under Rule 651(c). *People v. Greer*, 212 Ill. 2d 192, 205 (2004). Counsel's Rule 651(c) certification that he or she complied with those duties creates a rebuttable presumption that counsel provided the petitioner "a reasonable level of assistance." *People v. Urzua*, 2023 IL 127789, ¶ 54; *People v. Huff*, 2024 IL 128492, ¶¶ 21-22. A defendant may rebut this presumption by demonstrating that counsel did not make the necessary amendments to his postconviction petition in order to further his claims. *People v. Johnson*, 154 Ill. 2d 227, 238 (1993).

¶ 30    Pursuing a claim counsel believes has no merit is not required under Rule 651(c). See Ill. S. Ct. R. 651(c). Because postconviction counsel is not obligated to advance frivolous claims, " 'the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition.' " *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30 (quoting *People v. Profit*, 2012 IL App (1st) 101307, ¶ 23).

¶ 31    Here, counsel filed a Rule 651(c) certificate stating that she spoke with defendant, reviewed the record, and did not find any reason to amend the petition. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Given that she stated that she complied with Rule 651(c) and was not required to amend defendant's petition, we presume that she provided defendant with a reasonable level of assistance. See *Urzua*, 2023 IL 127789, ¶ 54. Defendant argues that he has rebutted that presumption of compliance because counsel failed to properly amend his petition or to argue his claims at all. Defendant focuses on counsel's motion to withdraw as the basis for unreasonable assistance of counsel.

¶ 32    Defendant argues that *People v. Kuehner*, 2015 IL 117695, ¶ 20, required postconviction counsel to continue with the matter because the circuit court already found that his claims were not frivolous. He contends counsel violated Rule 651(c) because she abandoned his claim.

12

However, *Kuehner* does not create a bright line rule that requires counsel to continue with a claim that has proceeded to the second stage once a circuit court determines that it contains the gist of a claim. Rather, it acknowledges that there may be times where the opposite may be true. See *id.* ¶ 21. In such cases, counsel must demonstrate, through a motion to withdraw, why the court's initial decision may be incorrect. *Id.* Our supreme court in *Kuehner* likens a motion to withdraw after the circuit court determines a petition has merit to a motion to reconsider. *Id.* A motion to withdraw "does not ask the trial court to conduct its first-stage assessment a second time but rather seeks to bring to the trial court's attention information that was not apparent on the face of the *pro se* petition at the time such assessment was made." *Id.* Here, counsel brought to the court's attention the prior appeal and issues decided therein which implicated *res judicata* and barred the claim defendant made in the petition.

¶ 33       Defendant further contends that the circuit court erred in granting counsel's motion to withdraw. While defendant contends counsel was required to pursue his claim because it "arguably" had merit, seeking relief on a postconviction claim that "arguably" has merit is not the standard with which we view counsel's ability to withdraw. Filing a motion to withdraw as postconviction counsel is proper when counsel determines she is ethically obligated to withdraw and explains in the motion why each of the petitioner's claims lack merit. *People v. Frey*, 2024 IL 128644, ¶ 27. We will uphold the withdrawal if the record shows that counsel complied with Rule 651 and demonstrates that the claims in defendant's petition were frivolous or patently without merit. *People v. Moore*, 2018 IL App (2d) 170120, ¶ 38.

¶ 34       Here, counsel demonstrated compliance with Rule 651, and we must presume that she provided a reasonable level of assistance. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Thus, the determination of whether the court's granting of her motion was proper depends on whether we

13

find defendant's petition without merit. See *People v. Nesbitt*, 2023 IL App (1st) 211301, ¶ 42. We have found that defendant's petition is barred by *res judicata* thus it also lacks merit. *Supra* ¶ 26. Counsel therefore had no obligation to further defendant's frivolous claim, and it was well within her purview to file a motion to withdraw from the matter. Accordingly, the circuit court, having found that defendant's claim was barred by *res judicata*, properly granted her motion.

¶ 35                                    III. CONCLUSION

¶ 36            The judgment of the circuit court of Will County is affirmed.

¶ 37            Affirmed.